Judith A. HEDTCKE, Plaintiff-Appellant-Petitioner,

v.

SENTRY INSURANCE COMPANY, Defendant-Respondent.

Supreme Court

*No. 81–552. Submitted on briefs October 6, 1982.— Decided November 30, 1982.*

(Also reported in 326 N.W.2d 727.)

For the plaintiff-petitioner the cause was submitted on the briefs of *John M. Stoiber* and *Brenner, Brenner & Frame,* Waukesha.

For the defendant-respondent the cause was submitted on the brief of *G. George Lawrence* and *Kluwin, Dunphy, Hankin & McNulty,* Milwaukee.

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals filed December 9, 1981, affirming a judgment of the circuit court for Waukesha county, John P. Buckley, circuit judge. After a fire destroyed the home she owned jointly with her husband, Judith A. Hedtcke filed a complaint against Sentry Insurance Company to recover for loss or damage to the home under a fire insurance policy that Sentry had issued to Hedtcke and her husband as named insureds. Sentry failed to serve an answer to the complaint within the statutory time period, and Hedtcke refused to grant Sentry an extension of time. The circuit court entered an order granting Sentry's request for additional time to serve and file its answer. Sentry filed an answer. Thereafter Sentry moved to dismiss the complaint for failure to state a claim upon which relief may be granted, or alternatively, for summary judgment on the ground that Sentry was not liable under the policy because the property damage was caused by Hedtcke's husband, a named insured. The circuit court then entered a judgment dismissing the complaint on the merits. The court of appeals affirmed the judgment.

The same two issues posed in the court of appeals are presented to this court: (1) did the circuit court abuse its discretion in enlarging the time in which Sentry might serve and file an answer? (2) did the circuit court err in holding as a matter of law that an innocent insured is

barred from recovering under a policy of fire insurance where another insured intentionally caused the damage giving rise to the claim?

We conclude that the circuit court abused its discretion in granting Sentry additional time to serve and file its answer and erred in dismissing the complaint on the merits. Accordingly we reverse the decision of the court of appeals.

## I.

The facts relevant to the review of both issues are not in dispute. On July 27, 1980, Judith A. Hedtcke commenced this action against Sentry to recover proceeds under a fire insurance policy. Her complaint alleges that, on December 13, 1976, Sentry issued a three-year policy covering any loss or damage resulting from a fire on the residential property owned jointly by Hedtcke and her husband. The language of the insurance policy is incorporated into the complaint by reference. The policy lists both Judith A. Hedtcke and her husband, Ronald E. Hedtcke, under the designation "named insured." The complaint further alleges that a fire destroyed the property on November 20, 1979, at which time her husband, not she, occupied the home. The complaint further alleges that, although Hedtcke had complied with all obligations established by the policy, she had not received the proceeds forthcoming under the insurance policy.

The summons and complaint were served on Sentry on August 14, 1980. When the time for serving an answer expired on September 3, 1980, Sentry had not yet served its answer upon Hedtcke. During a September 10, 1980, telephone conversation, Sentry's attorney asked Hedtcke's attorney for an extension of time to serve the answer. Hedtcke would not grant the extension of time.

Sentry filed its answer on September 15, 1980, denying coverage on the ground that the policy relieved Sentry of liability if an insured caused the damage and that Hedtcke's husband was wholly or partially responsible for the fire which caused the damage.[1]

On September 15, 1980, Sentry served upon Hedtcke a notice of its motion to enlarge the time for serving an answer and to permit the answer previously served to stand as the answer. Accompanying the notice was an affidavit of Sentry's attorney setting forth the reasons for the late answer. Hedtcke moved to strike the answer and also moved for default judgment. The circuit court heard the motions of both parties on October 16, 1980. The transcript of the hearing is very brief and amounts to a statement of appearances. No testimony was taken, and the arguments of counsel were not transcribed.

The circuit court entered an order on October 27, 1980, permitting the extension of time requested by Sentry and accepting Sentry's answer filed on September 15, 1980. The order makes no mention of the court's reasons for its decision. The circuit court did not rule on Hedtcke's motions, and we assume these motions were denied.

Sentry moved to dismiss the complaint for failure to state a claim upon which relief can be granted (sec. 802.06(2)(f), Stats. 1979–80) or for summary judgment pursuant to sec. 802.08, Stats. 1979–80. Hedtcke contends that the complaint states a cause of action and that the court should grant her summary judgment or, in the alternative, should deny both motions for summary judgment and proceed to trial on the merits. The motion was set for a hearing, but the record contains no transcript of the hearing. The circuit court issued a memorandum decision and entered judgment dismissing the complaint on its merits.

---

[1] On October 30, 1980, Ronald E. Hedtcke plead guilty in the circuit court for Waukesha county to the charge of party to arson.

The court of appeals held that the circuit court had not abused its discretion in granting Sentry an extension of time in which to serve its answer. It also affirmed the judgment of the circuit court dismissing the complaint on the merits, believing that it was "bound by prior rulings" of this court. It acknowledged, however, Hedtcke's "persuasive arguments" for overruling prior decisional law in Wisconsin barring recovery by an insured under an insurance policy when another insured intentionally caused the damage.

## II.

The first issue we address is whether the circuit court abused its discretion in granting Sentry additional time to serve and file an answer. Sec. 802.06(1), Stats. 1979–80, requires a defendant to serve its answer upon the plaintiff within 20 days after service of the complaint upon the defendant, but sec. 801.15(2)(a) grants the circuit court power to enlarge the time for serving an answer. Sec. 801.15(2)(a) provides as follows:

"When an act is required to be done at or within a specified time, the court may order the period enlarged but only on motion for cause shown and upon just terms. . . . If the motion is made after the expiration of the specified time, it shall not be granted unless the court finds that the failure to act was the result of excusable neglect. The order of enlargement shall recite by its terms or by reference to an affidavit in the record the grounds for granting the motion."

The power conferred upon the circuit court by sec. 801.15(2)(a) is highly discretionary.[2] Nevertheless, an

_____

[2] A congruent provision is sec. 806.07(1)(a), Stats. 1979–80, which provides that a party may be relieved of a judgment on the grounds of "mistake, inadvertence, surprise, or excusable neglect." The excusable neglect standard for granting an enlargement of

enlargement of time is "not a favor to be granted to a litigant as a matter of grace." *Johnson v. Retzlaff,* 200 Wis. 1, 3, 227 N.W. 236 (1929). The circuit court grants relief under sec. 801.15(2)(a) if it finds reasonable grounds for noncompliance with the statutory time period (which the statute and this court refer to as excusable neglect) and if the interests of justice would be served by the enlargement of time, *e.g.,* that the party seeking an enlargement of time has acted in good faith and that the opposing party is not prejudiced by the time delay. *Dugenske v. Dugenske,* 80 Wis. 2d 64, 68–69, 257 N.W. 2d 865 (1977); 4 Wright and Miller, *Federal Practice and Procedure,* sec. 1165, pp. 624–25 (1969); 2 Moore's *Federal Practice,* par. 6.07–6.08 (1982).

In determining whether to grant the dilatory party relief, the first step is to determine if there are reasonable grounds for the noncompliance with the statutory time period (excusable neglect). If the motion is made after the expiration of the specified time, an order enlarging the time for performing an act must be based on a finding of excusable neglect; when the circuit court determines that there is no excusable neglect, the motion must be denied. *Jolitz v. Graff,* 12 Wis. 2d 52, 57, 106 N.W.2d 340 (1960). We have described excusable neglect as "that neglect which might have been the act of a reasonably prudent person under the same circumstances." It is "not synonymous with neglect, carelessness or inattentiveness." *Giese v. Giese,* 43 Wis. 2d 456, 461, 168 N.W.2d 832 (1969).

---

time is substantially equivalent to the excusable neglect standard for vacating a default judgment. *Hansher v. Kaishian,* 79 Wis. 2d 374, 391, 255 N.W.2d 564 (1977). Cases relating to relieving a party of a default judgment are therefore relevant to a motion to enlarge the time for serving an answer.

Sec. 801.15(2)(a), Stats. 1979–80, is similar to Rule 6(b), Federal Rules of Civil Procedure.

But the circuit court must go further than considering the causes for the neglect. The interests of justice require the circuit court to be aware of the effects of an order denying or granting relief. The circuit court must be cognizant that denial of a motion for enlargement of time to answer may result in a default judgment in favor of the plaintiff. Sec. 806.02, Stats. 1979–80. The law views default judgments with disfavor and "prefers, whenever reasonably possible, to afford litigants a day in court and a trial on the issues." *Dugenske v. Dugenske,* 80 Wis. 2d 64, 68, 257 N.W.2d 865 (1977). On the other hand, the circuit court should also be aware of the party's and society's interest in prompt adjudication and "the probability that a policy which excused or tolerated a lawyer's neglect would foster delay in litigation" and lower the quality of legal representation. *Dugenske v. Dugenske,* 80 Wis. 2d at 70. See also *Hollingsworth v. American Financial Corp.,* 86 Wis. 2d 172, 184, 271 N.W. 2d 872 (1978). The circuit court, considering these policies, must scrutinize the particular facts in the case before it and determine whether the interest of justice will best be served by granting or denying a motion to enlarge the time.[3]

---

[3] Charles D. Clausen and David P. Lowe in their article entitled *New Wisconsin Rules of Civil Procedure: Chapters 801 to 803,* 59 Marq. L. Rev. 1 (1976), comment on sec. 801.15(2)(a) as follows:

Paragraph (2)(a) replaces section 269.45 which required the motion for enlargement of time to be accompanied by an affidavit showing cause, even when the motion was interposed prior to the expiration of the time period sought to be enlarged. The new rule does not require an affidavit in such circumstances since the affidavit would only say in writing what the attorney would ordinarily say to the court. To require a sworn, written statement in such circumstances seems to be needless formalism leading to unnecessary paperwork. It should also be noted that the proposed rule does not permit ex parte enlargements under any circumstances. In this respect it differs from former section 269.45.

No motion for enlargement which is interposed after the expiration of the specified time may be granted under the new rule

With these standards in mind, we turn to our consideration of the circuit court's order in the case at bar. The circuit court's decision under sec. 801.15(2)(a) will not be disturbed by an appellate court unless an abuse of discretion is clearly shown. *St. Francis Savings & Loan v. Hearthside Homes,* 75 Wis. 2d 476, 479, 249 N.W.2d 924 (1977); *Giese v. Giese,* 43 Wis. 2d 456, 460, 168 N.W. 2d 832 (1969). Given this standard, the issue on review

unless the court finds that the failure to act was the result of excusable neglect. The term "excusable neglect" is an imprecise one which has led to rather variant holdings in the federal courts and in the state courts. It seems clear that neither inadvertence nor oversight is a sufficient grounds for enlargement of time,[12] but the distinction between "inadvertence" and "excusable neglect" can be a tenuous one.[13]

In Giese v. Giese,[14] the Wisconsin Supreme Court said " 'excusable neglect' is not synonymous with neglect, carelessness or inattentiveness, but rather is that neglect which might have been the acts of a reasonably prudent person under the same circumstances."[15]

Attorneys should note that the Wisconsin Supreme Court has held in Millis v. Raye,[16] that an enlargement of time will be allowed after the time has run only when the initial failure to do the act was the result of excusable neglect and there has been no inexcusable delay in moving for enlargement. Thus, the excusable neglect provision, by interpretation, has been made to apply to the time within which the motion for enlargement of time is made.[17]

[12] Driver v. Gindy Mfg. Corp., 24 F.R.D. 473 (E.D. Pa. 1959); Mason v. British Overseas Airways Corp., 20 F.R.D. 213 (S.D. N.Y. 1957).

[13] See Colgate-Palmolive Co. v. North American Chem. Corp., 238 F. Supp. 81 (S.D. N.Y. 1964).

[14] 43 Wis. 2d 456, 168 N.W.2d 832 (1969).

[15] Accord, Stryker v. Town of La Pointe, 52 Wis. 2d 228, 190 N.W.2d 178 (1971).

[16] 16 Wis. 2d 79, 113 N.W.2d 820 (1962).

[17] See also Briggson v. City of Viroqua, 264 Wis. 40, 58 N.W.2d 543 (1953).

■

is not whether this court would or would not have granted Sentry relief but rather whether the circuit court abused its discretion in reaching its decision.

■

Because "the exercise of discretion is not the equivalent of unfettered decision-making," the record on appeal must reflect the circuit court's reasoned application of the appropriate legal standard to the relevant facts in the case. *Hartung v. Hartung*, 102 Wis. 58, 66, 306 N.W. 2d 16 (1981). This court has described the roles of the circuit court and the appellate tribunal with respect to issues within the discretion of the circuit court as follows:

"The trial court must undertake a reasonable inquiry and examination of the facts as the basis of its decision. The exercise of discretion must depend on facts that are of record or that are reasonably derived by inference from the record and the basis of that exercise of discretion should be set forth. This court will not find an abuse of discretion if the record shows that discretion was in fact exercised and if the record shows that there is a reasonable basis for the trial court's determination." *Howard v. Duersten*, 81 Wis. 2d 301, 305, 260 N.W.2d 274 (1977).

■

When the circuit court sets forth the reasons for its decision under sec. 801.15(2)(a), this court will focus on the facts of record to determine whether they support the court's reasons. When the circuit court sets forth no reason or inadequate reasons for its decision, this court may engage in its own examination of the record and determine whether the circuit court exercised its discretion and whether the facts provide support for the circuit court's decision. If the record indicates that the circuit court failed to exercise its discretion, if the facts of record fail to support the circuit court's decision, or if

this court's review of the record indicates that the circuit court applied the wrong legal standard, this court will reverse the circuit court's decision as an abuse of discretion. *Christensen v. Economy Fire & Casualty Company,* 77 Wis. 2d 50, 55–56, 252 N.W.2d 81, 84 (1977) ; *Klimas v. State,* 75 Wis. 2d 244, 247, 249 N.W.2d 285 (1977) ; *Hyslop v. Maxwell,* 65 Wis. 2d 658, 664, 223 N.W.2d 516 (1974) ; *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W. 2d 512 (1971).

Contrary to the mandate of sec. 801.15(2)(a), Stats. 1979–80, the order granting Sentry's motion for an enlargement of time to serve and file an answer fails to assert a finding of excusable neglect or to recite the grounds for granting the motion. The sole indication of the circuit court's reason for granting the enlargement is a statement by the circuit court during the motion hearing to the effect that "to be two weeks late in filing an answer is no reason for the court to allow default judgment in the amount of $41,000."

As the order states no reasons for its issuance we must review the record *ab initio.* In order to have exercised its discretion to grant Sentry's motion to enlarge the time, we must assume that the circuit court made a finding of excusable neglect as required by the statute and our prior cases. We turn to the meager record before us to determine whether there are facts in the record to support the circuit court's implicit finding of excusable neglect. We conclude that there are no such facts.

The record reveals that Sentry presented its reasons for its failure to serve a timely answer in the affidavit of its attorney. The essence of the affidavit is that the press of other legal business prevented the attorney from serving an answer. This court has not held as a matter of law that the press of other legal business does or does

not constitute excusable neglect. Rather, it has often held that the circuit court did not abuse its discretion in holding that the pressures of a busy law office, generally asserted and standing alone, do not justify an attorney's failure to meet a statutory deadline. *Dugenske v. Dugenske,* 80 Wis. 2d 64, 257 N.W.2d 865 (1977); *Jolitz v. Graff,* 12 Wis. 2d 52, 106 N.W.2d 340 (1960); *Meyers v. Thorpe,* 227 Wis. 200, 278 N.W. 462 (1938). Responding to assertions that the circuit court abused its discretion in failing to find excusable neglect on the showing of other legal business, we have stated that "[t]he 'press of other legal business' is, at best, a weak cause of excusable neglect," *Giese v. Giese,* 43 Wis. 2d 456, 461, 168 N.W.2d 832 (1969), and that excusable neglect should be predicated not on a mere statement of the press of other business but on specific incidents and a persuasive explanation which justify the attorney's neglect during the entire period of his or her inattention.

According to the affidavit, the complaint arrived while Sentry's attorney was involved in "a complex insurance coverage jury trial" in Juneau, Wisconsin, during the week of August 18, 1980. "[I]mmediately prior to commencement of that trial," he was absent from the office to take depositions in Los Angeles, California. This information raises more questions than it answers. The complaint was served on August 14, not "during the week of August 18, 1980." The phrase "immediately prior to commencement of trial" does not clarify whether or not the taking of depositions actually coincided with the time period in which the answer was to be served (that is, August 14 through September 3), and does not fix the duration of the attorney's absence from the office. The affidavit, taken at face value, presents no specific incidents showing that the press of other legal business prevented Sentry's attorney from filing an answer. We do not know from the affidavit whether the

attorney's schedule allowed for time to draft an answer or, at the very least, to apply for an enlargement of time prior to the expiration of the statutory period. These and other questions should have been addressed at the hearing on Sentry's motion, but there is no record that they were.

The affidavit in the case at bar advances an additional justification for Sentry's failure to file an answer. The affidavit asserts that the complaint and summons were misplaced and not discovered until September 9, 1980, six days after the time for serving the answer had expired. In *Dugenske v. Dugenske,* 80 Wis. 2d 64, 69, 257 N.W.2d 865 (1977), we held that the circuit court had not abused its discretion in deciding that misplacing a document while moving the law office was not an adequate explanation for the attorney's failure to meet a deadline. We characterized the question as a close one. In this case the documents were mislaid during the normal course of business, rather than during the chaotic circumstances of an office move. In such a situation, the circuit court had to draw the line between excusable neglect and mere inadvertence on the basis of supplementary explanations by the dilatory party.

In this case, on an *ab initio* review of the record, we cannot uphold the circuit court's implicit finding of excusable neglect, because not only are the facts in the record ambiguous regarding the press of legal business, but also the record indicates that the circuit court did not rely on the press of legal business justification set forth in the affidavit to reach its decision to grant Sentry's motion. We therefore cannot say that the circuit court resolved the ambiguities in the affidavit in Sentry's favor. Nor can we find facts in this record to support a determination that there was excusable neglect.

Apparently the circuit court considered that Sentry's prompt action in remedying its failure to serve an an-

swer is sufficient in and of itself to warrant its granting Sentry relief without a finding of excusable neglect. Sentry served its answer only nine days after the statutory time period had expired. Our review of the relevant case law leads us to reject this theory and to conclude that while Sentry's prompt remedial action after the expiration of the statutory time limit is "a material factor bearing on whether relief should be granted," *Hansher v. Kaishian,* 79 Wis. 2d 374, 392, 255 N.W.2d 564 (1977), prompt action does not eliminate the requirement that a dilatory party demonstrate excusable neglect for its initial failure to meet the statutory deadline. Therefore, if the circuit court based its order on Sentry's "prompt action," the circuit court abused its discretion by applying the wrong legal standard and by failing to exercise its discretion to determine whether there was excusable neglect.

Sentry places great reliance on *Cruis Along Boats, Inc. v. Standard Steel Products Mfg. Co.,* 22 Wis. 2d 403, 126 N.W.2d 85 (1964), to support its assertion that prompt action after the expiration of the time period is the decisive factor in determining whether to grant the dilatory party's motion to enlarge the time. In *Cruis Along,* the circuit court considered the reasons advanced by the dilatory party, including the press of other legal business, and found that the facts failed to establish that the neglect was excusable. On appeal this court held that the circuit court had not abused its discretion. This court further noted the dilatory party's prompt action to correct its previous omission, saying:

"Prompt action by a defaulting party to remedy the situation caused by his neglect is *a material factor* to be considered when determining whether such neglect is 'excusable.' (Emphasis added.) *Millis v. Raye, supra,* at page 84; *Valentine v. Patrick Warren Construction Co.,* (1953), 263 Wis. 143, 170, 56 N.W. (2d) 860; *Johnson v. Eldred* (1861), 13 Wis. 539 (*482), 541

(*484). It is for this reason that we would have granted appellant's motion to vacate the judgment if we were sitting as a trial court in this case. Sec. 269.46(1), Stats., however, confers wide discretion on the trial court. Therefore, we are not prepared to lay down a rule that, in every case of neglect followed by a prompt application for relief, it is an abuse of discretion not to grant the relief." *Id.* at 410.

This language should not be read to mean that prompt action to remedy the situation constitutes sufficient grounds to justify a circuit court's granting relief. This language should be read to mean that the circuit court would not have abused its discretion if it had granted the dilatory party's motion after considering the prompt action combined with the reasons advanced by the dilatory party for the omission. This court was "not prepared to lay down a rule that in every case of neglect followed by a prompt application for relief it is an abuse of discretion not to grant relief." *Cruis Along Boats, Inc. v. Standard Steel Products Mfg. Co., supra,* 22 Wis. 2d at 410.

The three cases upon which the *Cruis Along Boats* court relied, *Millis v. Raye,* 16 Wis. 2d 79, 113 N.W.2d 820 (1962), *Valentine v. Patrick Warren Construction Co.,* 263 Wis. 143, 56 N.W.2d 860 (1953), and *Johnson v. Eldred,* 13 Wis. 539 (1861), were concerned with whether the circuit court abused its discretion in determining whether the dilatory party's failure to apply promptly for an enlargement of time was the result of excusable neglect. *Cruis Along, Millis, Valentine,* and *Johnson* establish that a circuit court may have to resolve three issues in deciding whether there is excusable neglect: (1) whether there was a reasonable basis for the party's failure to meet the statutory time period (excusable neglect); (2) whether the dilatory party's mo-

tion to enlarge the time was filed within a reasonable time after the expiration of the statutory time period; and (3) if the motion to enlarge the time was not filed within a reasonable time after the expiration of the statutory time period whether there was a reasonable basis for the party's delay (excusable neglect). As this court stated in *Millis v. Raye, supra,* 16 Wis. 2d at 83, "[t]he statutory words 'excusable neglect' refer to the failure to act with respect to applying for an extension of time within which to serve the bill of exceptions as well as to the failure to serve the bill."

Even though the dilatory party's prompt action in seeking to enlarge the time is not a substitute for determining whether the party's initial failure to meet the statutory deadline was the result of excusable neglect,[4] prompt action may be relevant to the determination of whether the neglect to act within the statutory period was the act of a reasonably prudent person under the same circumstances. Although not a substitute for a demonstration of excusable neglect, prompt action may give plausibility to the justifications given for the neglect. Prompt action is also relevant to determine whether relief is in the interest of justice, *e.g.,* whether the dilatory party has been acting in good faith, and whether the opposing party has been prejudiced. As we said in *Hansher v. Kaishian,* 79 Wis. 2d 374, 392, 255 N.W.2d 564 (1977), prompt application after the expiration of the time limit is "a material factor bearing on whether relief should be granted."

[4] For cases interpreting *Cruis Along,* see, *e.g., Borneman v. New Berlin,* 27 Wis. 2d 102, 106–107, 133 N.W.2d 328 (1965); *Menard v. Jiffy Self-Service Dry Cleaning,* 46 Wis. 2d 142, 174 N.W.2d 493 (1970); *Collings v. Phillips,* 54 Wis. 2d 204, 209–11, 194 N.W.2d 677 (1972); *Laska v. Steinpreis,* 69 Wis. 2d 307, 324–25, 231 N.W.2d 196 (1975); *Charolais Breeding Ranches, Ltd. v. Wiegel,* 92 Wis. 2d 498, 285 N.W.2d 720 (1979).

In conclusion, we hold that the circuit court erred as a matter of law in apparently holding that prompt action in making a motion to enlarge the time is sufficient in itself to support relief without a finding of excusable neglect; furthermore, we hold that the circuit court failed to exercise its discretion under sec. 801.15(2) to determine whether there was excusable neglect. Accordingly the circuit court's order constitutes an abuse of discretion and must be vacated. Mindful of the highly discretionary nature of the circuit court's decision under sec. 801.15(2)(a) and of the ambiguity of the factual record, we do not decide the issue ourselves, but remand the matter to the circuit court for a hearing and a determination of whether Sentry's motion should be granted. *Priske v. General Motors Corp.*, 89 Wis. 2d 642, 663–64, 279 N.W.2d 227 (1979).

If the circuit court issues an order enlarging the time, it must comply with sec. 801.15(2)(a). The order must set forth the finding that Sentry's failure to act was the result of excusable neglect and must recite by its terms or by reference to an affidavit in the record the grounds for granting the motion. If the circuit court denies the motion seeking enlargement of time, the order should state the reasoning of the court.

## III.

Whether or not the circuit court grants Sentry's motion to enlarge the time, it will once again confront substantive legal issues involved in this case. If it denies Sentry's motion to enlarge time, it will require guidance in determining the amount of damages to which Hedtcke is legally entitled.[5] If it grants the motion, the circuit

[5] Upon entry of a default judgment, the circuit court may hold a hearing or inquiry to determine damages. Sec. 806.02, Stats. 1979–80; *Bartelt v. Braunsdorf*, 57 Wis. 1, 3, 14 N.W. 869 (1883);

court will have to determine whether an innocent insured is barred from recovery on a fire insurance policy when another insured intentionally sets fire to the insured property. Because we foresee these contingencies and because the parties have thoroughly briefed the issue of the rights of the innocent insured, we address this issue in the interest of promoting judicial efficiency and prompt adjudication.

The parties agree that the legal issue presented to the circuit court was whether Hedtcke could recover under the policy if her husband, a named insured, intentionally caused the fire. Sentry argued that this case is governed by three Wisconsin cases which stand for the rule that an insured who is innocent of any wrongdoing cannot reap the benefits of an insurance policy when the intentional acts of another insured caused the property damage. Those cases are *Bellman v. Home Insurance Company of New York*, 178 Wis. 349, 189 N.W. 1028 (1922); *Klemens v. Badger Mutual Insurance Company*, 8 Wis. 2d 565, 99 N.W.2d 865 (1959), and *Shearer v. Dunn County Mut. Ins. Co.*, 39 Wis. 2d 240, 159 N.W.2d 89 (1968). Hedtcke contended that the facts of those cases can be distinguished from the facts of this case.

The circuit court granted Sentry's motion to dismiss the complaint on its merits on the basis of the pleadings, briefs, and arguments of counsel. The circuit court found

10 Wright and Miller, *Federal Practice and Procedure*, sec. 2688, p. 283 (1973). If Sentry contests the amount of damages claimed in the complaint, it may appear at the hearing to assess damages, cross-examine the plaintiff's witnesses, and present evidence to contest the amount of recovery. *Bartelt, supra*, 57 Wis. at 3–4; *Smithers v. Brunkhorst*, 178 Wis. 530, 533, 190 N.W. 349 (1922); Annot., *Defaulting Defendant's Right to Notice and Hearing as to Determination of Amount of Damages*, 15 ALR 3d 586, pp. 607–10 (1967); 10 Wright and Miller, *Federal Practice and Procedure*, sec. 2688, pp. 284–85 (1973); 5 *Callaghan's Wisconsin Pleading and Practice*, sec. 39.07, p. 503 (1978).

that Judith and Ronald Hedtcke were joint owners of the home which at the time of the fire was insured by Sentry under a fire insurance policy naming both spouses as insured parties; that the policy contained a standard provision absolving Sentry of liability for damage if it was "caused, directly or indirectly, by . . . neglect of the insured to use all reasonable means to save and preserve the property at and after a loss"[6] or if "the hazard is increased by any means within the control or knowledge of the insured";[7] that by the time of the fire Judith Hedtcke had left the home, had initiated divorce proceedings, and had obtained a court order directing her husband to vacate the premises by November 23, 1979; that the insured property was destroyed by fire on November

[6] In the section entitled "Perils not included," the policy states:

"This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: (a) enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; (b) invasion; (c) insurrection; (d) rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy; (i) *neglect of the insured to use all reasonable means to save and preserve the property at and after a loss* or when the property is endangered by fire in neighboring premises; (j) nor shall this Company be liable for loss by theft." (Emphasis added.)

[7] In the section entitled "Conditions suspending or restricting insurance," the policy states:

"Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) *while the hazard is increased by any means within the control or knowledge of the insured;* or (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days; or (c) as a result of explosion or riot, unless fire ensues, and in that event for loss by fire only." (Emphasis added.)

20, 1979, and that Ronald Hedtcke had pleaded guilty to the crime of arson for his part in setting fire to the Hedtcke home. The circuit court concluded that the instant case was governed by the three cases cited by Sentry and dismissed the complaint. The court of appeals affirmed the judgment dismissing the complaint, stating that it too was bound by cited precedent. The court of appeals said:

"[A]lthough Hedtcke advances persuasive arguments in attempting to have this court overrule prior decisional law of this state, that is not the function of this court. We are bound by prior rulings of the Wisconsin Supreme Court and decline to restructure the law of this state which would have the effect of overruling the Wisconsin Supreme Court."

The issue on review is whether, as a matter of law, the intentional act of an insured joint owner of property bars an innocent insured joint owner of property from recovering under a fire insurance policy.

We first analyze the three cases upon which Sentry, the circuit court, and the court of appeals rely to bar recovery by the innocent insured joint owner.

In *Bellman v. Home Insurance Company of New York,* 178 Wis. 349, 189 N.W. 1028 (1922), an "innocent" partner sought to recover on fire insurance policies insuring partnership property which one of the partners had wilfully destroyed. The policy provided that the insurer would "not be liable for loss or damage caused directly or indirectly by . . . neglect of the insured to use all reasonable means to save and preserve the property at and after a fire." The court began its analysis by stating the basic proposition that to allow an arsonist to recover insurance proceeds would "reward crime and shock the most fundamental notions of justice." *Id.,* 178 Wis. at 350. Without citing supporting authority, the court concluded that to permit a recovery by either the

partnership or an innocent partner where one of the partners has wilfully set fire to the insured property "is likewise repugnant to an intuitive sense of justice." *Id.* 178 Wis. at 350. The court then went on to explain the result it reached by referring to what it regarded as "fundamental principles." The court said that the nature of the partnership relation spawned the joint obligation that each partner would on his own behalf and on behalf of his partners "use all reasonable means to save and preserve the property." Thus when one partner sets fire to the property, held the court, the arson constitutes a breach of the policy by all partners, and the insurer is relieved of all liability under the policy. The *Bellman* court did not state whether its reasoning was limited to those cases in which a partnership is the insured.

This court further discussed the rights of an innocent insured in *Klemens v. Badger Mutual Insurance Company*, 8 Wis. 2d 565, 99 N.W.2d 865 (1959). Mr. and Mrs. Klemens owned a dwelling as joint tenants and insured the dwelling in their joint names. The policy contained the same provision as the *Bellman* policy providing that the insurer is not liable for loss caused by neglect of the insured to save and preserve the property at and after a loss. The dwelling was destroyed by fire, and Mr. Klemens was convicted of arson. Mrs. Klemens, who was innocent of any involvement in the crime, sought to recover under the insurance policy, arguing that *Bellman* was limited to property owned by a partnership and to policies in which the partnership is the insured. The *Klemens* court interpreted *Bellman* to hold that when an insurance policy is written in joint names, the insureds have a joint obligation to comply with the terms of the policy regardless of the nature of the common ownership of the property. Although it noted the joint nature of property ownership, the *Klemens* court centered its attention on the contractual obligations incurred by the

insureds under the insurance policy and concluded that joint insurance implies a joint obligation of both insureds, rather than the separate obligations of each.

Under the *Bellman* and *Klemens* decisions, the rights of the innocent insured turn on whether the interests and obligations of the insureds are considered joint or several. If the interests and obligations of the insureds are joint, the misconduct of one insured is considered the misconduct of the other, and neither may recover under the policy. If the interest and obligations of the insureds are several, then each insured's recovery depends on his or her conduct, not that of the other insured.

The *Bellman* rule was discussed in *Shearer v. Dunn County Farmers Mut. Ins. Co.*, 39 Wis. 2d 240, 248, 159 N.W.2d 89 (1968). Mr. Shearer owned the real estate and was the named insured; Mrs. Shearer neither owned the property nor was she a named insured. She was, however, suspected of setting fire to the property. The court reiterated the rule that an insured who intentionally destroys the insured property bars his innocent insured from recovering under the policy. The court went on to say that this rule is "sometimes put on a ground of an implied condition in the contract that the named insureds will not destroy the property and will use their best efforts to protect it." *Id.*, 39 Wis. 2d at 248. The court, however, rejected the insurer's suggestion that the actions of Mrs. Shearer, an *uninsured* spouse, be imputed to the insured spouse seeking to recover under his insurance policy. The court explained: "Married people are still individuals and responsible for their acts. Vicarious liability is not an attribute of marriage." *Id.* 39 Wis. 2d at 249.

Although *Bellman* and *Klemens* offer few clues as to their analytical foundation, these cases implicitly rest on the "principle of fortuitousness," that is, that insurance covers fortuitous losses and that losses are not fortuitous

if the damage is intentionally caused by the insured. Even where the insurance policy contains no language expressly stating the principle of fortuitousness, courts read this principle into the insurance policy to further specific public policy objectives including (1) avoiding profit from wrongdoing; (2) deterring crime; (3) avoiding fraud against insurers; and (4) maintaining coverage of a scope consistent with the reasonable expectations of the contracting parties on matters as to which no intention or expectation was expressed. Keeton, *Insurance Law*, sec. 5.3(a), p. 279 (1971). In *Bellman* the court applied the principle of fortuitousness to include not only the insured who engaged in misconduct, but the innocent insured as well. The question is whether the principles underlying *Bellman* and *Klemens* dictate a result different from the result in those cases.

Courts in other jurisdictions, on examining the principles underlying this court's analysis in *Bellman, Klemens,* and *Shearer,* have concluded that these principles require rejection of the rule denying recovery by innocent insureds.[8] These courts focus, as we did in

---

[8] *See, e.g., Hosey v. Seibels Bruce Group, S. Carolina Insurance Co.,* 363 So. 2d 751 (Ala. 1978); *Steigler v. Insurance Co. of North America,* 384 A.2d 398 (Del. 1978); *Auto-Owners Insurance Co. v. Eddinger,* 366 So. 2d 123 (Fla. Dist. Ct. App. 1979); *Economy Fire and Casualty Co. v. Warren,* 71 Ill. App. 3d 625, 390 N.E.2d 361 (1979); *Hildebrand v. Holyoke Mutual Fire Insurance Co.,* 386 A.2d 329 (Me. 1978); *St. Paul Fire and Marine Insurance Co. v. Molloy,* 291 Md. 139, 433 A.2d 1135 (1981); *Morgan v. Cincinnati Insurance Co.,* 411 Mich. 267, 307 N.W.2d 53 (1981); *Delph v. Potomac Insurance Co.,* 95 N.M. 257, 620 P.2d 1282 (1980); *Winter v. Aetna Casualty and Surety Co.,* 96 Misc. 2d 497, 409 N.Y.S.2d 85 (1978); *Lovell v. Rowan Mutual Fire Ins. Co.,* 302 N.C. 150, 274 S.E.2d 170 (1981); *Ryan v. MFA Mutual Insurance Company,* 610 S.W.2d 428 (Tenn. App. 1980). *See also,* Annot., *Fraud, False Swearing, or Other Misconduct of Insured as Barring Recovery on Property Insurance by Innocent Coinsured,* 24 ALR 3d 450 (1969).

*Klemens,* on the contract of insurance rather than the nature of property ownership. These courts recognize the fundamental principle of individual responsibility for wrongdoing, as this court did in *Shearer.* These courts address, as we did in *Bellman,* the issue of the innocent insured's recovery with scrupulous care to prevent the guilty arsonist from reaping financial benefit from the arson. For the reasons we set forth below, we conclude that the modern rule adopted by courts in other jurisdictions permitting recovery by innocent insureds preserves the essence of the legal principles recognized in the *Bellman, Klemens,* and *Shearer* cases and produces an equitable result, and we adopt the modern rule.

Courts adopting the modern rule focus on the contract of insurance rather than the interests and obligations arising from the nature of the property ownership.[9] In

[9] Several courts emphasize that the joint obligation of the insureds arises from the insureds' ownership of the property as joint tenants or as tenants-by-the-entirety. *See, e.g., Fuselier v. United States Fidelity and Guaranty Company,* La. App., 301 So. 2d 681 (1974); *Rockingham Mutual Ins. Co. v. Hummel,* 219 Va. 803, 250 S.E.2d 774 (1979); *Cooperative Fire Ins. Assoc. of Vermont v. Domina,* 137 Vt. 3, 399 A.2d 502 (1979); *Short v. Oklahoma Farmer's Union Ins. Co.,* 619 P.2d 588 (Okla. 1980).

The Court of Appeals of Indiana attacked the reasoning of these cases with a perceptive analysis in *American Economy Insurance Company v. Liggett,* 426 N.E.2d 136, 140 (Ind. App. 1981):

"The legal fiction of the entireties' estate in real estate is designed for the protection of the spouses and the marriage. It was initially designed to prevent the individual creditors of either spouse from taking the marital home. The courts generally, and divorce courts in particular, find no difficulty in dividing an entireties estate. I find it a perversion of this legal fiction, designed to protect the spouses' rights and marital property, to use it to destroy the property rights of an innocent spouse."

For a critical analysis of *Rockingham Mutual Ins. Co. v. Hummel, supra,* see Note, *Spouse's Fraud as a Bar to Insurance Recovery,* 21 Wm. & Mary L. Rev. 543 (1979).

*Klemens* this court concluded without analysis that if there are several insureds, the joint nature of the insurance contract gives rise to joint interests and obligations on the part of each policyholder. The courts following the modern rule discard this conclusory maxim and turn instead to the language of the policy to determine whether the rights of the insureds are joint or several.

One court justified this mode of analysis by noting that one who owns an undivided interest in property may insure his or her interest under a separate insurance policy or under a joint policy with the other co-owners. In the former case, arson perpetrated by one owner would not influence the right of the innocent owner to recover under his or her own separate policy; in the latter case, the innocent owner would confront an absolute bar to recovery. The court implied that these disparate results should not rest on whether there was one policy or several policies. *Hoyt v. New Hampshire Fire Ins. Co.*, 92 N.H. 242, 29 A.2d 121, 123 (1942).

Other courts have emphasized the need to construe the policy language by following traditional rules of contract construction. Phrased in terms of contract law, the issue is whether the insureds have promised the same performance, or a separate performance as to each, that is, whether each insured has promised that all insured parties will use "reasonable means" to preserve the property, or whether each has promised that he or she will protect the property. This issue is resolved by looking at the terms of the policy. Professor Corbin states the issue as follows:

"The question whether two or more promisors have promised a single undivided performance, or have each promised a limited and separate performance, is wholly a problem of interpretation. The question is merely what was the performance promised and who promised it." 4 Corbin, *Contracts*, sec. 926, 704 (1951).

Other courts, finding the policy language to be ambiguous and thus fairly susceptible to more than one meaning, interpret the language against the insurer who drafted the policy or in accordance with the reasonable expectations of the insured. Still other courts view the insurance policy as a contract of adhesion and interpret "the form contract to mean what a reasonable buyer would expect it to mean, and thus [protect] the weaker party's expectation at the expense of the stronger's." Paterson, *The Interpretation and Construction of Contracts,* 64 Colum. L. Rev. 833, 858 (1964), quoted in *American Economy Ins. Co. v. Liggett,* 426 N.E.2d at 141 (Ind. App. 1981). Whichever approach is taken, courts have concluded that the person owning an undivided interest in property and being a named insured would reasonably suppose that his or her individual interest in the property was covered by the policy. *Hoyt v. New Hampshire Fire Ins. Co.,* 92 N.H. 242, 29 A.2d 121, 123 (1942); *American Economy Ins. Co. v. Liggett,* 426 N.E.2d 136, 139 (Ind. App. 1981). *See also Howell v. Ohio Casualty Ins. Co.,* 130 N.J. Super. 350, 327 A.2d 240, 243 (1974), modifying 124 N.J. Super. 414, 307 A.2d 142 (1973).

Wisconsin law has long maintained that an insurance policy should be construed as it is understood by a reasonable person in the position of the insured. *Cieslewicz v. Mutual Service Cas. Ins. Co.,* 84 Wis. 2d 91, 97–98, 267 N.W.2d 595 (1978). In the policy in this case "named insured" is defined as including the named insured and members of the insured's family if residents of the named insured's household and persons under the age of 21 in the care of the insured. The policy does not state whether the obligations of the insured are joint or several. We interpret the language in this policy of insurance as not barring an innocent insured from recover-

ing under the policy merely by virtue of the fact that another insured intentionally caused the damage to the insured property. We need not and do not decide whether an insurer may make the obligations of the insureds joint.

Courts adopting the modern rule recognize the need to deter arsonists but also recognize the fundamental principle of individual responsibility for wrongdoing. A legal principle denying coverage to an innocent party implicitly imputes the guilt of the arsonist to the innocent insured. Contrary to our basic notions of fair play and justice, the *Bellman* rule punishes the innocent victim. An absolute bar to recovery by an innocent insured is particularly harsh in a case in which the arson appears to be retribution against the innocent insured. Having lost the property, the innocent insured is victimized once again by the denial of the proceeds forthcoming under the fire insurance policy. *American Economy Ins. Co. v. Liggett,* 426 N.E.2d 136, 140, n. 1, 140 (Ind. App. 1981). Focusing on the nature of the individual responsibility for wrongdoing, we hold that the obligations of the insurer under the insurance policy in this case should be considered several as to each person insured.

Finally, courts adopting the modern rule have fashioned it to effectuate the public policy that guilty persons must not profit from their own wrongdoing. As one court said: "the arsonist whose business is failing and who cannot sell his property must not be permitted, as a matter of public policy, to find a way out of his dilemma by setting a fire. It may also be appropriate to prevent the depressed, jealous, murderous or even insane spouse from profiting by setting a fire by denying that spouse any recovery from an insurance carrier." *American Economy Ins. Co. v. Liggett,* 426 N.E.2d 136, 140 (Ind. App. 1981).

We conclude, as have the courts adopting the modern rule, that the absolute bar embodied in the *Bellman* rule is an inappropriate method of deterring crime and preventing a wrongdoer from profiting from his or her own wrong. These valid public policy concerns can be vindicated by the trial court if it tailors the recovery permitted the innocent insured to guard against the possibility that the arsonist might receive financial benefit as a result of the arson. For example, the arsonist may be denied all recovery while the innocent insured may recover a pro rata share of the insurance proceeds, according to his or her interest in the property. Indirect profit and insurance fraud may also be avoided without recourse to an absolute bar on the recovery of the innocent insured. The possibility that an arsonist may profit through the co-mingling of funds with the innocent insured or otherwise is a factual issue properly resolved by the fact-finder.

On reexamination of the *Bellman* rule we are persuaded that imputing the incendiary actions of an insured to the innocent insured and creating an absolute bar to recovery by the innocent insured, produces inequitable results. We therefore conclude that the *Bellman* rule should no longer be followed in this state, and accordingly we overrule *Bellman* and *Klemens*. We reverse the circuit court's order in the case at bar dismissing this complaint on the merits. Hedtcke's rights must be determined in the particular factual context of the case and in light of the public policy concerns discussed above.

We remand the case to the circuit court for further proceedings on the question whether Sentry's motion to enlarge the time for answering should be granted. Whether a default judgment or a trial ensues, the question of the extent of Sentry's liability to Hedtcke under the policy shall be determined not in accordance with the

*Bellman* and *Klemens* cases but in accordance with the principles set forth herein.

*By the Court.*—The decision of the court of appeals is reversed; the judgment of the circuit court is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.