SᴛᴀᴛE of Wisconsin, Plaintiff-Respondent,

v.

Paul K. Sʜᴀɴᴋs, Defendant-Appellant.†

Court of Appeals

*No. 01–1372–CR. Submitted on briefs February 7, 2002.—
Decided March 13, 2002.*

**2002 WI App 93**

(Also reported in 644 N.W.2d 275.)

† Petition to review denied 7-26-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven A. Koch* of *Seymour, Kremer, Nommensen, Morrissy & Koch, L.L.P.,* Elkhorn.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sally L. Wellman,* assistant attorney general, and *James E. Doyle,* attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Paul K. Shanks appeals from a judgment of conviction for first-degree sexual assault of

a child, contrary to Wɪs. Sᴛᴀᴛ. § 948.02(1) (1999–2000),[1] and an order denying his request for postconviction relief. Shanks argues that the trial court erroneously exercised its discretion in allowing the victim to sit on her grandmother's lap while testifying. Shanks also asserts that the trial court's denial of a new trial based on newly discovered evidence constituted an erroneous exercise of discretion. Finally, Shanks contends that there is insufficient evidence to sustain a guilty verdict in this matter. We disagree with all of his contentions and affirm the judgment and order.

## FACTS

¶ 2. On May 12, 2000, Shanks was charged with first-degree sexual assault of a child, contrary to Wɪs. Sᴛᴀᴛ. § 948.02(1). The complaint alleged that Shanks had sexual contact with K.L.E., d.o.b. May 15, 1997, by placing his right index finger in her vagina. Shanks and K.L.E.'s mother, Candy Chandler, lived together starting around the beginning of October 1999. The complaint alleged that on October 27, 1999, K.L.E. told Chandler "Paul hurting me" while holding up her right index finger. Chandler confronted Shanks and he denied hurting K.L.E.

¶ 3. On November 2, 1999, Chandler took K.L.E. to the emergency room, after which, on November 3, 1999, she was examined by sexual assault nurse examiner Jacqueline Callari at Lakeland Medical Complex; Callari noted a one-centimeter tear in K.L.E.'s posterior fourchette, consistent with digital penetration. K.L.E. also told Callari "Paul hurting me" and pointed to her vagina.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 4. A jury trial was held on October 31, 2000. The State's first witness was K.L.E. Prior to her testimony, the State asked that K.L.E. be allowed to sit on her grandmother's lap while testifying, citing WIS. STAT. § 906.11(1) as authority. Shanks's defense counsel objected, asking, "How do I know that her grandmother hasn't exercised undue influence over her already?" and "[w]hy don't we see how she reacts before we go putting her on the grandmother's lap?" Shanks's counsel then stated, "[I]t's my understanding that this is the paternal grandmother, and there's some conflict between the father and the defendant here. I just don't think that if they did it with someone else, that would be all right, if they brought the mother in, I wouldn't object to that, but why do we have to have the paternal grandmother sitting there?" The trial court granted the State's motion and allowed K.L.E. to testify while sitting on her grandmother's lap.

¶ 5. Shanks was found guilty of the charge and was sentenced to fifteen years' probation, with one year in jail as a condition of probation. On April 26, 2001, Shanks filed a postconviction motion asking for a new trial based on newly discovered evidence. He also asked the court to set aside the verdict for insufficient evidence. The trial court denied the motions and Shanks appeals.

## DISCUSSION

¶ 6. Both parties agree that the proper standard of review for all of Shanks's arguments is whether or not the trial court erroneously exercised its discretion. The term "discretion" contemplates an exercise of judicial judgment based on three factors: (1) the facts of record, (2) logic and (3) the application of proper legal

standards. *Shuput v. Lauer*, 109 Wis. 2d 164, 177–78, 325 N.W.2d 321 (1982). Where the court has undertaken a reasonable inquiry and examination of the facts as the basis of its decision and has made a reasoned application of the appropriate legal standard to the relevant facts in the case, it has properly exercised its discretion and we will affirm if there is a reasonable basis for its determination. *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 471, 326 N.W.2d 727 (1982). Stated another way, we will not reverse a discretionary determination by the trial court if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision. *Prahl v. Brosamle*, 142 Wis. 2d 658, 667, 420 N.W.2d 372 (Ct. App. 1987). We need not agree with the trial court's exercise in order to sustain it. *Indep. Milk Producers Co-op v. Stoffel*, 102 Wis. 2d 1, 12, 298 N.W.2d 128 (Ct. App. 1980).

■

¶ 7. Shanks argues that the trial court erroneously exercised its discretion when it allowed K.L.E. to testify while sitting on her grandmother's lap. We reject this contention.

¶ 8. Shanks concedes that there is no specific procedure for a court to follow in determining the circumstances under which a child should be allowed assistance to testify but cites *State v. Suka*, 777 P.2d 240 (Haw. 1989), as the only authority for his argument.[2] In *Suka*, the Hawaii Supreme Court found reversible error when a representative of a victim-witness program was allowed to stand behind a fifteen-year-old victim and

---

[2] More extensive discussion and analysis of *State v. Suka*, 777 P.2d 240 (Haw. 1989), can be found in Judge Charles B. Schudson, *On Trial, Support Persons and Comforting Laps in Court: Dangerous Decisions from Hawaii Threaten Sexually Abused Children,* ROUNDTABLE MAGAZINE, Summer 1990, at 12.

place her hands on the victim's shoulders while she testified. *Id.* at 241–43. The Hawaii Supreme Court stated that the jury might conclude that the representative had learned of information unavailable to the jury and believed that the victim was telling the truth. *Id.* at 242.

¶ 9. However, the *Suka* court specifically noted that this same risk of prejudice is unlikely when a witness is accompanied by a close relative because the jury is more likely to view that as family support; in addition, the *Suka* court noted that there is less risk of bolstering credibility if the witness is quite young as then the jury would likely view it as needed assistance. *Id.* at 242 n.1. Here, we have the exact situation contemplated by *Suka*; the victim was quite young, three years old at the time of trial, and she sat on the lap of her grandmother. *Suka* is not binding precedent upon this court and is of no value here.

■

¶ 10. Wisconsin Stat. § 906.11 allows a trial court to control the mode and order of interrogation and presentation of witnesses:

> **(1)** Control by judge. The judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to do all of the following:
>
> (a) Make the interrogation and presentation effective for the ascertainment of the truth.
>
> (b) Avoid needless consumption of time.
>
> (c) Protect witnesses from harassment or undue embarrassment.

The trial court has the power to alter courtroom procedures in order to protect the emotional well-being

of a child witness, *State v. Gilbert*, 109 Wis. 2d 501, 517, 326 N.W.2d 744 (1982), and is not required to determine that a child is unable to testify unless accommodations are provided. Courts have fashioned rules to protect a child, scrupulously taking into consideration the traumatic effect of testifying, of facing a defendant and of being subject to cross-examination. *Id.* at 515.

¶ 11. Here, the trial court was aware that the victim was only three years old and the nature of the case was a sexual assault by her mother's roommate. The trial court also was informed that the child had lived with her grandmother for quite some time pursuant to a court order and did not see her mother very frequently. The trial court stated:

> I know the law provides a certain amount of leeway here for the court to make a discretionary decision . . . .
>
> . . . .
>
> I guess they can consider the fact she's sitting on grandma's lap just as well as they can consider a witness fidgeting or whatever, and I guess it's just a proper matter of discretion. I usually try them without a seat. I just think, I saw the girl walking by, so I recall her to be a fairly tiny child . . . .
>
> . . . .
>
> I will allow it in the discretion of the court.

The trial court informed the jury that K.L.E. was going to testify from her grandmother's lap because of her small size and instructed the grandmother, in the presence of the jury, not to coach the child in any way.

¶ 12. We see no misuse of discretion in allowing the child witness to sit on her grandmother's lap while testifying. Here, the trial court wisely used the tools

609

available to it to lessen the burden on K.L.E. and afforded her as much protection as was consistent with Shanks's constitutional rights. *Id.* at 517.[3]

¶ 13. Shanks also contends that the trial court erroneously exercised its discretion when it denied his postconviction motion for a new trial based on newly discovered evidence. The requirements for granting a new trial for newly discovered evidence are:

> (1) The evidence must have come to the moving party's knowledge after a trial; (2) the moving party must not have been negligent in seeking to discover it; (3) the evidence must be material to the issue; (4) the testimony must not be merely cumulative to the testimony which was introduced at trial; and (5) it must be reasonably probable that a different result would be reached on a new trial.

*State v. Brunton*, 203 Wis. 2d 195, 200, 552 N.W.2d 452 (Ct. App. 1996) (citation omitted). Shanks assumes the burden of establishing each of these five criteria by clear and convincing evidence. *Id.* at 207.

¶ 14. The basis for Shanks's newly discovered evidence is in the form of two affidavits, the first from Chandler and the second from Richard Stoerp, an acquaintance of Chandler's and Shanks's.

---

[3] Shanks also argues for the first time on appeal that the trial court should have considered the factors set forth in Wis. Stat. § 967.04(7) for permitting a videotaped deposition in lieu of the child's testimony at trial. This suggestion was not made at trial. Issues not raised or considered in the trial court will not be considered for the first time on appeal. *Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W.2d 140 (1980).

¶ 15. Chandler's affidavit reads as follows, in relevant part:

1. That I am Candy Chandler, the same person who testified in the case of "State of Wisconsin vs. Paul K. Shanks["] on October 31, 2000 in Elkhorn, Wisconsin.

. . . .

4. That during my testimony of October 31, 2000, I stated under redirect examination by [the district attorney] that it was Saturday, October 30, 1999, that I went to Ripon, Wisconsin and left my daughter, [K.L.E.], with Paul all day.

5. That at the time of my testimony, I was under a great deal of stress and I now recall that on Saturday, October 30, 1999, I did not go to Ripon, Wisconsin, I did not leave my daughter, [K.L.E.], alone with Paul, but rather left her with her grandmother. Richard Stoerp, Paul and myself went to Fifties East bowling alley in Lake Geneva, Wisconsin. I returned home and Richard Stoerp later brought Paul home and at no time on Saturday, October 30, 1999, did I leave [K.L.E.] alone with Paul.

6. I state under oath that at no time from the time [K.L.E.] reported hurting in the area of her crotch on October 27, 1999 until I took her for the vaginal examination on November 3, 1999, did I ever leave Paul alone with her. I have reflected on this and I can truthfully say this at this time under oath that from October 27, 1999 to November 3, 1999, I did not leave [K.L.E.] alone with Paul.

Stoerp's affidavit is meant to corroborate Chandler's:

I, Richard Stoerp, under oath state as follows:

That on Saturday, October 30, 1999, I met Paul Shanks and Candy Chandler and we went to a Hallow-

611

een party at Fifties, which is at the bowling alley in Lake Geneva, Wisconsin. I was with them all night and Candy's daughter, [K.L.E.] was not with Candy nor was Paul at any time with her daughter [K.L.E.] during the time I observed them. I first observed them at about 9:00 to 9:30 p.m. on October 30, 1999. I went to their house in Lake Geneva, Wisconsin and met them at that time. We all then went together to Fifties, a bowling alley in Lake Geneva. We stayed there until closing, which was approximately 2:00 a.m. We then went to breakfast at Hanny's Restaurant and left there at approximately 2:05 a.m. because we did not stay there. I then took Paul home and arrived at the house at approximately 2:15 a.m. and that was the last I saw of Paul that morning. I remember this entire incident as it was the day before Halloween and it was a Halloween party at Fifties. I specifically recall this as being Saturday, October 30, 1999.

¶ 16. The newly discovered evidence is, according to Shanks, the fact that Chandler did not go to Ripon on October 30, 1999, but instead went to a party that evening with Shanks and Stoerp. Thus, Shanks argues, this evidence demonstrates that he was never alone with K.L.E. during the seventy-two hour time frame for the injury, as established by Callari, and thus had no opportunity to commit the offense. However, the trial testimony surrounding Chandler's whereabouts on October 30, 1999, was nowhere as unequivocal as Shanks would ask us to believe.

¶ 17. Chandler was asked many times, by both the district attorney and defense counsel, about her whereabouts on October 30, 1999, and the timing of the trip to Ripon.

[CHANDLER]: [H]e was also with her alone when I had to take Matt's brother to go visit his girlfriend in Ripon, Wisconsin.

[DISTRICT ATTORNEY]: Do you know when that was?

[CHANDLER]: Right off hand I don't remember.

. . . .

[DISTRICT ATTORNEY]: . . . . But wasn't it that Saturday that you went to Ripon, and Paul Shanks stayed alone with her all day?

. . . .

[CHANDLER]: I don't remember. I don't remember when we went to Ripon . . . .

¶ 18. Despite previous statements that K.L.E. first told her about her injury on October 27, 1999, initially at trial Chandler was adamant that K.L.E. told her of the injury on Saturday, October 30, 1999. But then the district attorney presented Chandler with previous statements she had made about the day of October 30, 1999, and asked:

[DISTRICT ATTORNEY]: . . . . So Saturday you went to Ripon and Paul Shanks was alone with her?

[CHANDLER]: I'm sorry. Yes. He did watch her that night. I just wasn't sure which night it was we went to Ripon, but —

[DISTRICT ATTORNEY]: So it wasn't Saturday that [K.L.E.] first told you, because Saturday you were in Ripon. It was Wednesday that she first told you?

[CHANDLER]: It could very possibly be. These dates are all screwy. I'm sorry.

¶ 19. Furthermore, K.L.E.'s father, Matthew E., was asked if he remembered going to Ripon with Chandler on October 30, 1999; Matthew agreed that he

613

had gone to Ripon with Chandler but "thought it was sometime in the middle of November." The district attorney asked, "So the statement of that Saturday beforehand, that doesn't coincide with your memory?" Matthew responded, "No, it doesn't."

¶ 20. The first two criteria for granting a new trial based on newly discovered evidence is that the evidence came to the attention of the defense after trial and that the defendant was not negligent in seeking to discover it. *Id.* at 200. Shanks has not established by clear and convincing evidence either of these two conditions. During trial, Chandler was quite hazy regarding her whereabouts on October 30, 1999, and the timing of the trip to Ripon. Matthew testified that the Ripon trip did not occur on October 30, 1999, but instead took place sometime in November 1999. Therefore, Shanks was aware of the confusion surrounding the activities of October 30, 1999, and the possibility that Chandler had not gone to Ripon that day, leaving K.L.E. alone with Shanks.

¶ 21. In addition, it was within Shanks's own personal knowledge that he, Chandler and Stoerp had been together the night of October 30, 1999. Shanks fails to explain why he was unaware, until after trial, of his own whereabouts on October 30, 1999. The affidavits presented by Chandler and Stoerp do not constitute newly discovered evidence.

¶ 22. Finally, Shanks argues that insufficient evidence was presented to sustain a finding of guilt. We disagree.

▮▮▮▮▮

¶ 23. The standard for reviewing the sufficiency of the evidence to support a conviction is the same in either a direct or circumstantial evidence case. *State v.*

*Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).
Under that standard, commonly referred to as the
reasonable doubt standard of review:

> The burden of proof is upon the state to prove every
> essential element of the crime charged beyond reason-
> able doubt. The test is not whether this court or any of
> the members thereof are convinced [of the defendant's
> guilt] beyond reasonable doubt, but whether this court
> can conclude the trier of facts could, acting reasonably,
> be so convinced by evidence it had a right to believe and
> accept as true .... The credibility of the witnesses and
> the weight of the evidence is for the trier of fact. In
> reviewing the evidence to challenge a finding of fact, we
> view the evidence in the light most favorable to the
> finding. Reasonable inferences drawn from the evi-
> dence can support a finding of fact and, if more than
> one reasonable inference can be drawn from the evi-
> dence, the inference which supports the finding is the
> one that must be adopted.

*Id.* at 503–04 (citation omitted). An appellate court may
not substitute its judgment for that of the trier of fact;
accordingly, an appellate court may not reverse a con-
viction unless the evidence, viewed most favorably to
the State and the conviction, is so lacking in probative
value and force that no trier of fact, acting reasonably,
could have found guilt beyond a reasonable doubt. *Id.* at
501, 507.

¶ 24. If any possibility exists that the trier of fact
could have drawn the appropriate inferences from the
evidence adduced at trial to find the requisite guilt, an
appellate court may not overturn a verdict even if it
believes that the trier of fact should not have found
guilt based on the evidence before it. *Id.* at 507.

¶ 25. While we admit that the evidence presented at trial did not overwhelmingly indicate Shanks's guilt, we cannot conclude that the evidence, viewed most favorably to the State and the conviction, was so insufficient in probative value and force that as a matter of law no reasonable trier of fact could have found guilt beyond a reasonable doubt. Even though Chandler testified that K.L.E. initially identified her father as the source of her injury, Chandler later testified that K.L.E. soon after repeatedly identified Shanks as her assailant. Admittedly, K.L.E.'s trial testimony was, at best, inconsistent and equivocal. However, both Chandler and Callari testified that K.L.E. made statements shortly after the assault to each of them, separately, implicating Shanks. Furthermore, a police officer testified that when he interviewed Chandler on November 4, 1999, at her home, K.L.E. came into the room, pointed to her private parts with her right index finger and said Shanks hurt her. In addition, while Callari admitted that the injury could have been self-inflicted or caused by some unknown source, she testified that K.L.E.'s superficial abrasion was consistent with digital penetration. We may not substitute our judgment for that of the trier of fact. *Id.*

¶ 26. Shanks asserts that there was no evidence of his intent to become sexually aroused or gratified or that he placed his finger in K.L.E.'s vagina for that purpose. The trier of fact is free to choose among conflicting inferences of the evidence, *id.* at 506, and intent, including the intent to become sexually aroused or gratified, can be inferred from the conduct of the accused. *State v. Drusch*, 139 Wis. 2d 312, 326, 407 N.W.2d 328 (Ct. App. 1987). Intent to become sexually

aroused or gratified can be inferred when a man places his finger in the vagina of a two-year-old girl. The evidence presented here was not so insufficient in probative value and force that as a matter of law no reasonable trier of fact could have found guilt beyond a reasonable doubt.

## CONCLUSION

¶ 27. We reject Shanks's contentions that the trial court erroneously exercised its discretion in allowing the victim to sit on her grandmother's lap and in denying his motion for a new trial. We further reject his argument that there is insufficient evidence to sustain a guilty verdict in this matter. We affirm the judgment and order of the trial court.

*By the Court.*—Judgment and order affirmed.