STATE of Wisconsin, Plaintiff-Appellant,

v.

Rory A. KUENZI, Defendant-Respondent.†
[Case No. 2009AP1827-CR.]

STATE of Wisconsin, Plaintiff-Appellant,

v.

Robby D. KUENZI,Defendant-Respondent.
[Case No. 2009AP1828-CR.]

Court of Appeals

*Nos. 2009AP1827–CR, 2009AP1828–CR. Submitted on briefs December 10, 2010.—Decided February 24, 2011.*

2011 WI App 30

(Also reported in 796 N.W.2d 222.)

† Petition for Review filed.

297

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Katherine D. Lloyd*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the defendant-respondent *Rory A. Kuenzi*, the cause was submitted on the briefs of *Jefren E. Olsen*, assistant state public defender of Madison.

On behalf of the defendant-respondent *Robby D. Kuenzi*, the cause was submitted on the briefs of *Joshua D. Christianson* and *Thomas W. Johnson* of *Werner, Johnson & Hendrickson, S.C.*, New London.

A nonparty brief was filed by *Michael J. Cain* of Madison for Wisconsin Wildlife Federation.

Before Vergeront, P.J., Lundsten and Higginbotham, JJ.

¶ 1. LUNDSTEN, J. It is alleged here that Rory and Robby Kuenzi were operating their snowmobiles on a trail in Waupaca County when they came across a large number of deer in a field. They charged the deer with their snowmobiles, ramming and running over at least five. At one point, Robby Kuenzi rode on top of a downed deer and did a "burn out," causing the deer's abdomen to rip open. The Kuenzis tied a strap around the neck of another downed live deer, dragged it to a tree, and secured it there. The Kuenzis apparently planned to retrieve that deer later, but never returned.

¶ 2. The Kuenzis were criminally charged under the animal cruelty statute, Wis. Stat. § 951.02.[1] Both men moved to dismiss the charges, and the circuit courts granted the motions.[2]

¶ 3. The Kuenzis' primary argument is that the animal cruelty statute cannot be applied to their actions, no matter how cruel or senseless, because they were engaged in taking "wild animals" and the taking of non-captive wild animals is a hunting activity regulated

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[2] Judge Philip M. Kirk dismissed the charges against Rory Kuenzi, and Judge John P. Hoffmann dismissed the charges against Robby Kuenzi.

by Wis. Stat. ch. 29. In the Kuenzis' view, chapter 29, and only that chapter, regulates hunting and, therefore, they may take a wild animal by any means without fear of prosecution so long as their means are not specifically prohibited by chapter 29. We disagree and, accordingly, reverse and direct the courts to reinstate the charges.

## *Background*

¶ 4. The criminal complaints in these cases allege the following facts. In January 2009, a sheriff's deputy, acting on a tip, found five deer with significant injuries near a snowmobile trail in Waupaca County. Four of the deer were dead, and the fifth had to be euthanized. Several of the deer had broken legs, and one of these had apparently crawled some distance before dying. Another deer, found tied to a tree, had apparently suffocated trying to free itself. Tracks at the scene suggested that snowmobiles were used to injure and kill the deer.

¶ 5. Further investigation revealed that, on the day before the discovery, Rory and Robby Kuenzi were each operating snowmobiles on a trail when they came across a group of thirty or forty deer in a field. The Kuenzis left the snowmobile trail and began chasing the deer. They struck and ran over several of the deer. Robby Kuenzi rode on top of one deer and did a "burn out," causing the deer's abdomen to rip open. Rory Kuenzi, with his snowmobile, struck another deer in its back legs, knocking it down. The two men, acting in concert, held that deer down, tied a strap around its neck, dragged it to a wooded area, and tied it, still alive, to a tree. They apparently planned to retrieve the deer at some point, but never returned. Later, having moved

on to a different location, Rory Kuenzi struck and killed another deer. This time, Rory field-dressed the deer and took it with him.

¶ 6. The State charged Rory Kuenzi with six counts and Robby Kuenzi with five counts of party to the crime of mistreatment of animals under WIS. STAT. § 951.02. The charges were Class I felonies because the alleged mistreatment was intentional and resulted in death. *See* WIS. STAT. § 951.18(1) ("Any person who intentionally violates s. 951.02, resulting in the mutilation, disfigurement or death of an animal, is guilty of a Class I felony.").

¶ 7. Prior to trial, both of the Kuenzis moved to dismiss the charges, arguing that prosecution under WIS. STAT. § 951.02 controverted hunting regulations under chapter 29, something prohibited by WIS. STAT. § 951.015(1). The circuit courts granted the motions and the State appeals. Because both cases present the same legal issue and are based on the same underlying facts, they have been consolidated for purposes of this appeal.

### Discussion

¶ 8. Whether the alleged conduct in this case may be prosecuted under WIS. STAT. § 951.02 presents an issue of statutory interpretation. We apply the following principles:

> When we construe a statute, we begin with the language of the statute. We interpret the language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes[.]" *State ex rel. Kalal v.*

*Circuit Court for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. If we conclude the statutory language is plain, then we apply its plain meaning. *Id.*, ¶ 45. If we conclude it is ambiguous—that is, capable of being understood by reasonably well-informed persons in two or more senses—then we must resolve the ambiguity. *See id.*, ¶¶ 47–48.

*JP Morgan Chase Bank, NA v. Green*, 2008 WI App 78, ¶ 24, 311 Wis. 2d 715, 753 N.W.2d 536.

¶ 9. We first briefly summarize the statutes involved, and then address the Kuenzis' arguments.[3]

## A. The General Statutory Scheme

¶ 10. Chapter 951, titled "Crimes Against Animals," prohibits several acts directed toward animals. For example, it prohibits such acts as instigating fights between animals and harassing a dog trained to assist the disabled. *See* WIS. STAT. §§ 951.08 and 951.097. The prohibition at issue here is cruel mistreatment under WIS. STAT. § 951.02. It provides:

> No person may treat any animal, whether belonging to the person or another, in a cruel manner. This section does not prohibit bona fide experiments carried on for scientific research or normal and accepted veterinary practices.

Our attention is on the first sentence, which prohibits "cruel" treatment of "any animal."

---

[3] The Kuenzis are represented by different attorneys. They make some of the same arguments and some different arguments. Also, Robby states that he is adopting at least a portion of Rory's arguments. To simplify this opinion, we treat all of their arguments as if made by both of the Kuenzis.

¶ 11. Chapter 951 defines "cruel" as "causing unnecessary and excessive pain or suffering or unjustifiable injury or death." WIS. STAT. § 951.01(2). The term "animal" is also defined in chapter 951. It broadly includes "every living . . . [w]arm-blooded creature, except a human being." WIS. STAT. § 951.01(1).[4] Thus, on its face, § 951.02's cruel mistreatment prohibition applies to all animals, including wild animals such as the deer in this case.

¶ 12. The Kuenzis do not argue that, when their behavior is viewed in the context of taking wild deer, their alleged behavior did not cause "unnecessary and excessive pain or suffering or unjustifiable injury or death." That is, the Kuenzis do not argue that their conduct was not "cruel," as that term is used in § 951.02. The Kuenzis do argue that, despite the broad definition of "animal," we should interpret "any animal" as excluding wild animals. We address this argument later in the opinion.

¶ 13. In addition to its several prohibitions, chapter 951 contains language intended to resolve conflicts that may arise between enforcement actions under that chapter and other laws. WISCONSIN STAT. § 951.015(1) provides:

> [Chapter 951] may not be interpreted as controverting any law regulating wild animals that are sub-

---

[4] WISCONSIN STAT. § 951.01(1) states:

(1) "Animal" includes every living:

(a) Warm-blooded creature, except a human being;

(b) Reptile; or

(c) Amphibian.

ject to regulation under ch. 169, the taking of wild animals, as defined in s. 29.001(90), or the slaughter of animals by persons acting under state or federal law.

Generally speaking, chapter 169 regulates captive wild animals and chapter 29 regulates non-captive wild animals. Thus, chapter 951 may not be applied in ways that controvert three categories of animal regulation laws: (1) laws regulating captive wild animals in chapter 169, (2) laws regulating the taking of non-captive "wild animals, as defined in s. 29.001(90)," and (3) federal and state laws regulating the slaughter of animals. Our focus here is on the second category of laws, those concerning the taking of non-captive wild animals.

¶ 14. Both the State and the Kuenzis assume that § 951.015(1)'s use of the phrase "the taking of wild animals" and the reference to the definition of "wild animals" in WIS. STAT. § 29.001(90) are meant as a general reference to chapter 29. That is, the parties assume that the legislature meant to impose a general prohibition on enforcement actions under chapter 951 that "controvert" chapter 29 regulations and, more generally, chapter 29's regulatory scheme. We agree.

¶ 15. Our review of chapter 29, titled "Wild Animals and Plants," reveals that most of its provisions directly or indirectly regulate the taking of non-captive "wild animals." Under that chapter, persons obtain approvals and then may take wild animals subject to restrictions found in the chapter and related DNR regulations. *See* WIS. STAT. § 29.024 (approvals); WIS. STAT. § 29.014(1) (directing the DNR to promulgate rules for these purposes); WIS. ADMIN. CODE ch. NR 10 (containing the regulations). The purpose of the regulations is to "conserve the fish and game supply and

305

ensure the citizens of this state continued opportunities for good fishing, hunting and trapping." Wis. Stat. § 29.014(1).

¶ 16. To sum up, § 951.02 prohibits "cruel" treatment of "any animal." The term "any animal" is broadly defined so that, on its face, the term encompasses the wild deer at issue in this case. The Kuenzis do not argue that their alleged behavior was not "cruel" within the meaning of chapter 951. And, a prosecution under § 951.02 may not "controvert" laws regulating the taking of non-captive wild animals under chapter 29. With this overview in mind, we turn to the Kuenzis' specific arguments.

## B. The Kuenzis' Arguments

### 1. Whether non-captive wild animals are "animals" under Wis. Stat. § 951.02

¶ 17. The Kuenzis argue that the term "animal" in § 951.02 should not be read as including non-captive wild animals, such as the deer in this case. They assert that, except for the cruel mistreatment prohibition, all of the prohibitions in chapter 951, by their terms, do not apply to non-captive wild animals. They reason that, because the other prohibitions do not apply to non-captive wild animals, it follows that the cruel mistreatment provision shares this limitation. We disagree.

¶ 18. First, the legislature defines "animal" in chapter 951—and, thus, in § 951.02—in a way that unambiguously includes non-captive wild animals. The broad definition states: " 'Animal' includes every liv-

ing . . . [reptile, amphibian, and] [w]arm-blooded crea-
ture, except a human being." WIS. STAT. § 951.01(1).
When words are specifically defined by the legislature,
their meaning is as defined, and we need not resort to
other rules of statutory construction. *Wisconsin
Citizens Concerned for Cranes & Doves v. DNR*, 2004
WI 40, ¶ 21, 270 Wis. 2d 318, 677 N.W.2d 612. Here, the
legislature has provided a clear definition that includes
all warm-blooded animals.

¶ 19. Second, the limited reading advocated by
the Kuenzis is inconsistent with the wording the legis-
lature chose to use to avoid conflicts with chapter 29.
Rather than exclude all non-captive wild animals from
coverage, the legislature instead prohibits enforcement
that controverts chapter 29 laws and regulations gov-
erning "the taking of wild animals." By prohibiting a
subset of takings—those that controvert chapter 29—
the legislature necessarily conveys its belief that there
are takings that do not controvert chapter 29.

¶ 20. Third, assuming for purposes of this discus-
sion only that the cruel mistreatment provision is the
sole prohibition in chapter 951 that is capable of appli-
cation to non-captive wild animals, that fact does not
support the Kuenzis' interpretation. It does not help the
Kuenzis because there is no inconsistency in having
several specific prohibitions directed at domesticated
and captive wild animals and also a general prohibition
on inflicting "unnecessary and excessive pain or suffer-
ing or unjustifiable injury or death" on all animals.

¶ 21. We turn our attention, then, to the Kuenzis'
remaining "animal" interpretation arguments based on
New Mexico and Minnesota law and on a recent United
States Supreme Court opinion.

¶ 22. The Kuenzis contend that a comparison
with New Mexico's animal cruelty law, and a case

interpreting that law, are helpful because New Mexico's law, like Wisconsin's, prohibits cruelty to "any animal." The comparison, however, is inapt. In addition to other differences, the New Mexico law does not define the term "any animal." Thus, unlike this court, the New Mexico Supreme Court in *State v. Cleve*, 980 P.2d 23 (N.M. 1999), was not faced with a statutory definition that unambiguously defined "animal" as including wild animals.

¶ 23. The Kuenzis note that part of Wisconsin's law is patterned on Minnesota's animal cruelty law and argue, based on the particulars of the Minnesota law, that it makes no sense to define "animal" as including non-captive wild animals because the laws of both states impose care and feeding requirements. The Kuenzis reason that it makes no sense to require that a person care for or feed a non-captive wild animal. Whatever merit that argument might have when directed at Minnesota's law, it is meritless when considered in light of chapter 951. The care and feeding provisions in chapter 951 are directed at persons "owning or responsible for confining or impounding any animal." *E.g.*, WIS. STAT. § 951.13. Thus, the provisions are not directed at the care and feeding of non-captive wild animals.

¶ 24. Finally, the Kuenzis point to a dissenting opinion in *United States v. Stevens*, 130 S. Ct. 1577 (2010). Within that dissent, the Kuenzis direct our attention to the assertion that "[v]irtually all state laws prohibiting animal cruelty either expressly define the term 'animal' to exclude wildlife or else specifically exempt lawful hunting activities." *Id.* at 1595 (Alito, J., dissenting). We are also directed to the dissent's quote from a law review article, which states that " 'state laws relating to the humane treatment of wildlife . . . are

308

virtually non-existent.' " *Id.* at 1595 n.3 (Alito, J., dissenting) (citation omitted). These observations, assuming they are correct, provide no guidance. The question here is the proper interpretation of Wisconsin law, not what might generally be true about state animal cruelty laws. An appendix to the dissent lists forty-four states, including Wisconsin, but has no meaningful analysis of the relevant Wisconsin laws—it merely quotes WIS. STAT. § 951.015(1).

¶ 25. Accordingly, we reject the Kuenzis' argument that the term "animal" in § 951.02 does not include the wild deer in this case.

### 2. Whether a cruel mistreatment prosecution under chapter 951 controverts chapter 29

¶ 26. The Kuenzis argue that an enforcement action against them under chapter 951 "controverts" chapter 29. They reason as follows:

- The Kuenzis' conduct constituted "taking" deer because the term "taking" is commonly understood as taking *by any means.*

- The term "hunting" is defined in chapter 29 to include "taking."

- The Kuenzis were, therefore, engaged in "hunting" as that term is used in chapter 29.

- Because laws regulating the hunting of non-captive wild animals are found in chapter 29, it "controverts" chapter 29 to prosecute the Kuenzis under chapter 951.

The first three steps in this reasoning are clear, and we briefly comment on those steps immediately below.

What is less clear is how, in the Kuenzis' view, the enforcement action here "controverts" chapter 29.

¶ 27. As to whether the Kuenzis' actions fall under the term "hunting," we first note our agreement with amicus Wisconsin Wildlife Federation's view that the Kuenzis' conduct is not generally considered "hunting." The Federation states:

> Based on discussions with many of its members and other hunters, the Federation has found that virtually all hunters found the alleged acts of the Defendants in this matter appalling and their characterization as "acts of hunting" to be demeaning and inaccurate. It is safe to say that Wisconsin sportsmen and women do not consider such conduct to be forms of hunting.

Although we agree with the Federation's take on the common use of the term hunting, it is a different matter whether the Kuenzis' conduct is subject to regulation under chapter 29 because that conduct fits the broad definition of hunting in that chapter. On this topic, the State and the Kuenzis agree, as they should, that the term "hunting" in chapter 29 is so broadly defined that it includes taking wild animals by any means. The legislature chose to define "hunting" as including "shooting, shooting at, pursuing, taking, capturing or killing or attempting to capture or kill any wild animal." WIS. STAT. § 29.001(42).

¶ 28. Although hunters in their conversations would not likely talk about the allegations against the Kuenzis as hunting, the alleged conduct is "hunting" for regulatory purposes under chapter 29. Thus, we turn our attention to the last step of the Kuenzis' reasoning, their assertion that, because laws regulating the hunt-

ing of non-captive wild animals are found in chapter 29, it "controverts" chapter 29 to prosecute the Kuenzis under chapter 951.

¶ 29. We begin by observing that the Kuenzis frame their argument in terms of multiplicity. That is, they contend that constitutional double jeopardy rights are implicated and multiple prosecutions for the same conduct under both chapter 29 and chapter 951 are prohibited. *See State v. Davison*, 2003 WI 89, ¶¶ 34–46, 263 Wis. 2d 145, 666 N.W.2d 1 (discussing impermissible multiple charging). It is apparent, however, that this case ultimately turns on the meaning of the "controverting" provision, WIS. STAT. § 951.015(1). As the Kuenzis admit, if § 951.015(1) does not prohibit applying the cruel mistreatment statute to the taking of wild animals, then there is no multiplicity problem.

¶ 30. The first "controverting" argument we address involves the Kuenzis' assumption that, on its face, WIS. STAT. § 951.015(1) simply directs that, if the more *general* cruel mistreatment provision in chapter 951 "controverts" the more *specific* provisions in chapter 29, then the more specific chapter 29 provisions govern. The Kuenzis reason that, because there is already a well-established canon of statutory construction providing that the specific governs the general, the may-not-be-interpreted-as-controverting language in § 951.015(1) must mean something more. And, the Kuenzis go on, that something more is the legislature's desire to override the general rule that, if an act forms the basis for a prosecution under more than one statutory provision, prosecutions may proceed under all such provisions. *See* WIS. STAT. § 939.65. The flaw in this reasoning is that we are not presented with a general/specific overlap.

¶ 31. Chapter 29 contains many prohibitions, but none against cruel mistreatment. For example, the record reveals that the Kuenzis were charged with "closed season" violations under WIS. STAT. §§ 29.055 and 29.971(11). The cruel mistreatment charge, however, is not a more general version of chapter 29's prohibitions on closed season hunting. And, even if there might be a general/specific relationship between the cruel mistreatment statute and some other particular prohibition in chapter 29, or a regulation promulgated thereunder, it is inaccurate to characterize the cruel mistreatment statute as more general with respect to chapter 29 as a whole. Accordingly, this general/specific argument is a non-starter—its premise is wrong.

¶ 32. In a distinct argument, the Kuenzis begin with what they assert is the State's position—that every hunter who violates a law under chapter 29 is also guilty of cruel mistreatment under chapter 951. The Kuenzis then assert that such an interpretation is absurd because, among other reasons, it would render moot the penalty provisions of chapter 29. Again, the Kuenzis' argument is a non-starter, and again the reason is a flawed premise.

¶ 33. The Kuenzis' assumption that every violation of chapter 29 is a violation of the cruel mistreatment statute is based on their assertion that the State expressly or implicitly takes that position. This is not accurate. We acknowledge that some statements made by the State, viewed in isolation, might be read that way. But it is clear that it is the State's position that cruel mistreatment violations may occur regardless whether the conduct does or does not involve a violation of chapter 29.

¶ 34. In the State's view, one we share, the cruel mistreatment of wild animals must be assessed based on the backdrop of common hunting practices and, in that context, the question is whether the alleged acts caused "unnecessary and excessive pain or suffering or unjustifiable injury or death." Wis. Stat. § 951.01(2). Quite obviously, the normal course of hunting frequently involves the infliction of pain and suffering and, just as obviously, the infliction of such pain and suffering does not subject hunters to prosecution under the cruel mistreatment statute. What is absurd is the Kuenzis' assertion that it is the State's view that "all hunting intentionally causes unnecessary pain or suffering or unjustifiable injury or death" and, therefore, that all hunting violates the cruel mistreatment statute.

¶ 35. Because their premise is wrong, so too is the Kuenzis' solution, namely, an interpretation of the "controverting" limitation in § 951.015(1) as forbidding application of the cruel mistreatment statute to any taking of a wild animal, no matter how cruel and senseless.

¶ 36. What remains is the Kuenzis' bald assertion that, if conduct is "hunting" as that term is broadly defined in chapter 29, such conduct necessarily is regulated *only* under chapter 29 and, therefore, the application of chapter 951 to any acts directed against wild animals is prohibited. This argument withers under even cursory scrutiny.

¶ 37. If the legislature intended a blanket prohibition on applying the cruel mistreatment statute to the taking of wild animals, it could have done so with simple direct wording, such as this: "This chapter may not be applied to the taking of wild animals." The legislature did not. To the contrary, as we explain in paragraph 19 above, the "controverting" limitation plainly contem-

313

plates that chapter 951 may be applied to the taking of wild animals. This is plain because the limitation in § 951.015(1) only prohibits interpretations—i.e., applications of chapter 951—to "the taking of wild animals" when such interpretations/applications controvert chapter 29.

¶ 38. In closing, we observe more generally that the Kuenzis' assertions of conflicts between applying the cruel mistreatment statute to their conduct and chapter 29 are all abstract. The Kuenzis do not, for example, argue that there is a conflict because there is a provision in chapter 29 that authorizes the use of a motorized vehicle to kill a wild animal.[5] Similarly, the Kuenzis do not identify a provision in chapter 29 that allows persons to pursue and kill wild animals any way they choose. In sum, the Kuenzis have failed to explain how their prosecution controverts in any manner regulations contained in, or promulgated under, chapter 29.

### *Conclusion*

¶ 39. For the reasons discussed, we reverse the orders of the circuit courts dismissing the charges against the Kuenzis. We remand with directions to reinstate the charges in both cases.

*By the Court.*—Orders reversed and causes remanded with directions.

---

---

[5] We note that the Wisconsin Wildlife Federation states in its amicus brief that its review of chapter 29 finds nothing that can be read as permitting intentionally pursuing and striking wild animals with a motorized vehicle, and the Kuenzis do not dispute that assertion.