STATE of Wisconsin, Plaintiff-Respondent,

v.

Shawn M. KLINGELHOETS, Defendant-Appellant.†

Court of Appeals

*No. 2011AP507–CR. Submitted on briefs December 14, 2011.
—Decided April 18, 2012.*

2012 WI App 55

(Also reported in 814 N.W.2d 885.)

† Petition for Review Filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert R. Henak* of *Henak Law Office*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael C. Sanders*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. GUNDRUM, J. This case stems from an incident in which Shawn M. Klingelhoets shot his neighbor's dog three times with a pellet gun, causing injury so severe the dog needed to be euthanized. Klingelhoets appeals from the judgment convicting him of a Class I felony for intentionally mistreating an animal, resulting in the animal's death, contrary to WIS. STAT. §§ 951.02 and 951.18(1) (2009–10),[1] and convicting him of a Class A misdemeanor for intentionally shooting a tied animal with a deadly weapon, contrary to WIS. STAT. § 951.09(1). He also appeals from the order denying his postconviction motion.

¶ 2. Klingelhoets contends that in order for him to be guilty of a Class I felony for intentionally mistreating an animal under the applicable penalty statute, WIS. STAT. § 951.18(1), he had to have intended not only to mistreat the animal, but also to have intended the animal's death. He argues that, because it was not proven at trial that he intended to kill the animal, as the State concedes, the evidence was insufficient to convict him of the Class I felony. Related to this argument, Klingelhoets also contends: (1) the jury instructions denied him due process and his right to a jury verdict on all facts necessary to convict, (2) reversal is appropriate in the interests of justice on the grounds that the jury instructions failed to require proof of all facts necessary to convict, and (3) he was denied the effective assistance of counsel because his trial counsel failed to object to the jury instructions. In addition to these arguments regarding his felony conviction, Klingelhoets contends the evidence related to his misdemeanor conviction was insufficient to establish that the

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

pellet gun he used, from the manner in which he used it, was a "deadly weapon" under Wis. Stat. § 951.09(1). All of Klingelhoets' arguments fail. We affirm the judgment and order.

*Facts*

¶ 3. A jury trial was held, producing the following undisputed facts. Klingelhoets and Tina Randolph were neighbors. On September 8, 2009, Klingelhoets, using a scope, aimed and fired a pellet gun at Randolph's seventeen pound Jack Russell terrier, Shakes, from a distance of approximately 144 feet. Shakes was tied to a stake in Randolph's yard at the time. Klingelhoets shot Shakes a total of three times. His first and second shot hit Shakes in the backside and elicited no noticeable reaction. With Klingelhoets' third shot, however, Shakes "went down." Klingelhoets testified that he shot Shakes because he was barking and "I thought I [would] just give him a little sting in the butt, like a shocking collar, you know, and that would be that, you know, and he would quit barking and—and carry on his happy little life."

¶ 4. After the incident, Shakes was taken to a veterinarian, who testified that all three shots caused wounds that penetrated Shakes' skin, with the third shot penetrating to the spinal canal, causing seizures and several heart stoppages among other complications. Explaining that complications from the bullet lodged in Shakes' spinal canal led to Shakes being euthanized,[2] the veterinarian further testified that one of the most common results of a pellet lodged in the spinal canal would be death.

---

[2] Though the veterinarian euthanized the dog, Klingelhoets does not dispute that Shakes died as a result of him shooting Shakes.

¶ 5. The investigating officer testified that the pellet gun Klingelhoets used had a scope on it and confirmed it was a "high-powered air rifle" at "the upper end of the velocities" for its caliber. He testified that the 144–foot distance from which Klingelhoets shot Shakes was within the pellet gun's range.

¶ 6. The jury found Klingelhoets guilty of intentionally mistreating an animal, resulting in the animal's death, and intentionally shooting a tied animal with a deadly weapon.

¶ 7. Klingelhoets moved for postconviction relief. On the felony conviction, he argued that the jury was not properly instructed on intentionally mistreating an animal, resulting in the animal's death, because the jury was not told that in order to find Klingelhoets guilty, it had to find he intended to kill Shakes. He also asserted that his trial counsel was ineffective for not objecting to the jury instructions. He further contended that he was entitled to a new trial in the interests of justice because the real controversy was not tried and because, with the proper jury instructions, the outcome would have been different and therefore justice had miscarried. On the misdemeanor conviction, Klingelhoets asserted that the evidence was insufficient to prove him guilty of intentionally shooting a tied animal with a deadly weapon, specifically because

> although a pellet gun has the capacity to cause death—as it did in this case—the manner in which it was used here—shooting at an animal from a distance of at least 144 feet away—was not likely to produce or easily and readily capable of producing death.

¶ 8. Following a hearing, the trial court denied Klingelhoets' motion. The court concluded that the jury was properly instructed because the crime of intention-

438

ally mistreating an animal, resulting in the animal's death, requires an intentional act of cruel treatment of an animal, which results in death, but does not require that the person who mistreated the animal intend the animal's death. The court further concluded that the evidence at trial was sufficient to show the pellet gun was a deadly weapon. This appeal follows.

*Discussion*

¶ 9. On appeal, Klingelhoets renews his postconviction argument that the jury was not properly instructed on the Class I felony of intentionally mistreating an animal, resulting in the animal's death, because the jury was not told that in order to find Klingelhoets guilty, it had to find that he intended to kill Shakes. In considering Klingelhoets' felony conviction, we are required to apply the undisputed facts to Wis. Stat. § 951.02 and the applicable penalty statute, Wis. Stat. § 951.18(1). Statutory interpretation is a question of law we review de novo. *Zellner v. Cedarburg Sch. Dist.*, 2007 WI 53, ¶ 16, 300 Wis. 2d 290, 731 N.W.2d 240. Our goal in interpreting statutory provisions is to give effect to the intent of the legislature. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. To determine that intent, we begin with the statute's language. *Cynthia E. v. La Crosse Cnty. Human Servs. Dep't*, 172 Wis. 2d 218, 225, 493 N.W.2d 56 (1992) (citing *J.A.L. v. State*, 162 Wis. 2d 940, 962, 471 N.W.2d 493 (1991)). If the legislature's intent is unambiguously declared through the words of the statute, our duty is to apply that intent to the case at hand; "we may not look beyond the statute's language to determine what that language means." *Cynthia E.*,

172 Wis. 2d at 225; *see also Kelley Co., Inc. v. Marquardt*, 172 Wis. 2d 234, 247, 493 N.W.2d 68 (1992).

¶ 10. Klingelhoets also renews his postconviction argument challenging the sufficiency of the evidence for his misdemeanor conviction under Wis. Stat. § 951.09(1).[3] When a defendant makes such a challenge, he or she bears a heavy burden under our standard of review. *See State v. Schwebke*, 2002 WI 55, ¶ 40, 253 Wis. 2d 1, 644 N.W.2d 666; *see also State v. Wachsmuth*, 166 Wis. 2d 1014, 1022–23, 480 N.W.2d 842 (Ct. App. 1992). The test for sufficiency of the evidence to convict is highly deferential. We may not reverse a conviction unless the evidence, viewed most favorably to the State and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, we may not overturn a verdict. *State v. Shanks*, 2002 WI App 93, ¶ 24, 253 Wis. 2d 600, 644 N.W.2d 275.

---

[3] Although Klingelhoets also frames his challenge to the felony conviction as a question of sufficiency of the evidence, the State does not dispute that the evidence at trial was insufficient to prove Klingelhoets intended Shakes' death. Further, Klingelhoets does not dispute that the evidence at trial was sufficient to find him guilty of the felony count if we hold that Wis. Stat. §§ 951.02 and 951.18(1) do not require proof of intent to kill in order to be found guilty on that count. Because we conclude that Klingelhoets' conviction did not require proof that he intended Shakes' death, the evidence on that count was sufficient.

¶ 11. We begin by reviewing the relevant statutes. *See Kalal*, 271 Wis. 2d 633, ¶¶ 45–46.

¶ 12. WIS. STAT. *§§ 951.02 and 951.18(1): Intentionally mistreating an animal, resulting in the animal's death.* Section 951.02 states in relevant part: "No person may treat any animal . . . in a cruel manner." WISCONSIN STAT. ch. 951 defines "cruel" as "causing unnecessary and excessive pain or suffering or unjustifiable injury or death." WIS. STAT. § 951.01(2). The penalties for violating § 951.02 are set forth in § 951.18(1), which provides in relevant part: "Any person who intentionally violates [§ ] 951.02, resulting in the mutilation, disfigurement or death of an animal, is guilty of a Class I felony."

¶ 13. Klingelhoets contends this provision requires the State to prove not only that he intended to violate WIS. STAT. § 951.02, i.e., that he intended to treat Shakes in a cruel manner, but that he *also intended the result,* Shakes' death. In asking us to read a requirement of intent to mutilate, disfigure or cause death into the second clause of the WIS. STAT. § 951.18(1) penalty provision at issue, i.e., "resulting in the mutilation, disfigurement or death of an animal," Klingelhoets places much emphasis on the statutory definition of "intentionally" found in our criminal intent statute, WIS. STAT. § 939.23(3). Section 939.23(3) states, "Intentionally"

> means that the actor either has a purpose to do the thing or cause the result specified . . . . In addition, . . . the actor must have knowledge of those facts which are necessary to make his or her conduct criminal and which are set forth after the word "intentionally."[4]

---

[4] Because neither party has suggested that Klingelhoets was "aware that his [] conduct [was] practically certain to cause"

¶ 14. Klingelhoets applies this definition of "intentionally" to the "resulting in the mutilation, disfigurement or death of an animal" clause in WIS. STAT. § 951.18(1), and argues that he could not be found guilty of the Class I felony unless the State proved (1) he had the purpose to do the thing or cause the result specified, that is, "mutilation, disfigurement or death," and (2) he knew his actions would result in Shakes' death. We disagree.

¶ 15. The plain language of WIS. STAT. § 951.18(1) belies Klingelhoets' interpretation: "Any person who intentionally violates [WIS. STAT. § ] 951.02, resulting in the mutilation, disfigurement or death of an animal, is guilty of a Class I felony." The first and second clauses are distinct and separated by a comma. Under the plain language, "intentionally" modifies only the first clause, "violates [§ ] 951.02." Thus, applying the WIS. STAT. § 939.23(3) definition of "intentionally" (i.e., "that the actor either has a purpose to do the thing or cause the result specified") to the first clause of § 951.18(1), "the thing" or "the result" that the State must prove the actor had the "purpose to do" or "cause" is "unnecessary and excessive pain or suffering or unjustifiable injury or death" to an animal. See §§ 951.02, 951.01(2). Likewise, the § 939.23(3) requirement that Klingelhoets have knowledge of the facts necessary to make his conduct criminal and which follow the word "intentionally," does not mean Klingelhoets had to know his actions would cause Shakes' death, but rather that he had to know his actions would be treating Shakes in a cruel manner. Unlike the first clause of the § 951.18(1) provision at

Shakes' death, we do not discuss this portion of the criminal intent statute's definition of "[i]ntentionally." See WIS. STAT. § 939.23(3).

442

issue, the second clause, "resulting in the mutilation, disfigurement or death of an animal," bears no direct relationship to the actor. Rather, this second clause merely looks to the final outcome of the intentional cruel treatment by the actor and increases the penalty exposure if the result is severe enough to amount to mutilation, disfigurement or death of an animal.

¶ 16. In writing the Class I felony provision in WIS. STAT. § 951.18(1) as it did, the legislature made clear that the provision has a singular intent requirement: intent to treat an animal in a cruel manner. *See* § 951.18(1). The language of § 951.18(1) neither explicitly nor implicitly suggests that a person who intentionally treats an animal in a cruel manner, with such treatment resulting in the mutilation, disfigurement or death of an animal, must also have intended the mutilation, disfigurement or death. That the legislature intended increased penalty exposure when an animal is more significantly harmed or killed is consistent with "other offenses spread throughout the statutes that proscribe certain conduct and impose a more serious punishment" where more serious harm results. *See State v. Patterson*, 2010 WI 130, ¶ 24, 329 Wis. 2d 599, 790 N.W.2d 909.

¶ 17. In sum, the plain language of WIS. STAT. § 951.18(1) does not require a defendant to have intentionally mutilated, disfigured or caused an animal's death for that defendant to be guilty of the Class I felony because "intentionally" modifies only the first clause of the relevant penalty provision. As such, the State only needed to prove Klingelhoets intended to treat Shakes in a cruel manner and that this cruel treatment resulted in Shakes' mutilation, disfigure-

ment or death. Klingelhoets does not dispute that the State proved this.[5]

¶ 18. Though we could end our analysis here, it is of note that our conclusion is bolstered by an examination of the WIS. STAT. § 951.18(1) penalty provision *immediately following* the penalty provision at issue,[6] which demonstrates that the legislature knows how to draft language plainly indicating a mens rea element if knowledge or intent is required. That subsequent provision states, "Any person who intentionally violates [WIS. STAT. § ] 951.02[], *knowing* that the animal that is the victim is used by a law enforcement agency to perform agency functions or duties and causing injury to the animal, is guilty of a Class I felony." Sec. 951.18(1)

---

[5] Given that WIS. STAT. § 951.18(1) does not require intention of the result, Klingelhoets' arguments premised on that incorrect interpretation need not be addressed. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (when a determination is dispositive, we need not address other issues). Thus, we do not address: whether the jury instructions denied Klingelhoets' due process and the right to a jury verdict on all facts necessary for conviction on the felony charge of intentionally mistreating an animal, whether reversal is appropriate in the interests of justice on the grounds that the jury instructions failed to require proof of all facts necessary for conviction on the felony charge, or whether Klingelhoets was denied the effective assistance of counsel because his trial counsel failed to object to the jury instructions on the felony charge.

[6] *See State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 ("Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.").

444

(emphasis added). The first clause here is essentially identical to the first clause in the penalty provision at issue in this case. Unlike the penalty provision at issue in this case, however, the second clause of this subsequent penalty provision begins with the word "knowing." "[K]nowing" would be superfluous in this penalty provision if "intentionally" in the first clause modified both the first and second clauses. *See Hubbard v. Messer*, 2003 WI 145, ¶ 9, 267 Wis. 2d 92, 673 N.W.2d 676 ("Each word should be looked at so as not to render any portion of the statute superfluous.").

¶ 19. Accordingly, if the legislature had intended to inject a mens rea element into the penalty provision at issue in this case, it easily could have done so with language similar to that subsequent penalty provision, such as: "Any person who intentionally violates [Wis. Stat. § ] 951.02, knowing that such treatment is practically certain to result in mutilation, disfigurement or death of an animal and causing mutilation, disfigurement or death of an animal, is guilty of a Class I felony." The legislature did not choose such language and we will not read a requirement of intent or knowledge into a statute where the legislature did not intend such a requirement. *See Monroe Cnty. Dep't of Human Servs. v. Luis R.*, 2009 WI App 109, ¶ 42, 320 Wis. 2d 652, 770 N.W.2d 795 ("Under well-established principles of statutory construction we do not read extra words into a statute to achieve a particular result and, when the legislative body uses particular words in one subsection of a statute but not in another subsection, we conclude the legislative body specifically intended a different meaning." (citing *Responsible Use of Rural & Agric. Land v. PSC*, 2000 WI 129, ¶¶ 37, 39, 239 Wis. 2d 660, 619 N.W.2d 888)).

¶ 20. This context reinforces our conclusion that the legislature purposely attached greater penalty exposure by making it a Class I felony when a person intentionally treats an animal in a cruel manner and that animal ends up disfigured, mutilated or dead as a result, *regardless* of whether the person intended the disfigurement, mutilation or death. *See* WIS. STAT. § 951.18(1).[7]

¶ 21. WIS. STAT. *§ 951.09(1): Intentionally shooting a tied animal with a deadly weapon.* Section 951.09(1) states: "No person may shoot, kill, or wound with a firearm, or with any deadly weapon, any animal that is tied, staked out, caged or otherwise intentionally confined in an artificial enclosure, regardless of size."

¶ 22. Klingelhoets argues that the evidence before the jury was insufficient to establish that the pellet gun he used to shoot Shakes was a "deadly weapon," as is required to convict him under WIS. STAT. § 951.09. Again, Klingelhoets is wrong. The trial court gave the

---

[7] We note also that our interpretation is consistent with a recent decision by another district of this court in *State v. Kuenzi*, 2011 WI App 30, 332 Wis. 2d 297, 796 N.W.2d 222. In *Kuenzi*, two snowmobilers were charged with intentionally treating deer in a cruel manner, resulting in the deer's deaths. *Id.*, ¶¶ 4–6. While *Kuenzi* largely focused on other issues, the court's expression of what is required to be guilty of a Class I felony for intentionally mistreating an animal under WIS. STAT. § 951.18(1) indicates it shares our interpretation. Specifically, the *Kuenzi* court stated that the charges against the snowmobilers "were Class I felonies because the alleged mistreatment was intentional *and* resulted in death." *See Kuenzi*, 332 Wis. 2d 297, ¶ 6 (emphasis added). The manner in which the *Kuenzi* court structured this sentence signifies that it too interprets "intentionally" as modifying the mistreatment clause but not the "resulting in" clause.

jury instructions for § 951.09 and included with the instructions the definition of "deadly weapon," submitted by Klingelhoets' trial counsel, which provided the following: " 'Deadly weapon' means an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death."

¶ 23. The question before the jury which is relevant to Klingelhoets' appeal[8] was whether the pellet gun, "from the manner in which it [was] used" in this case, was likely to produce or might easily and readily produce death. To reverse this conviction, we would have to conclude that the evidence, viewed most favorably to the State and the conviction, was so insufficient in probative value and force that as a matter of law no reasonable trier of fact could have found guilt beyond a reasonable doubt. *See Poellinger*, 153 Wis. 2d at 501; *see also Shanks*, 253 Wis. 2d 600, ¶¶ 24–25. We cannot so conclude.

¶ 24. In deciding whether the pellet gun, from the manner in which it was used, might easily and readily produce death, the jury had before it powerful evidence of this fact—Klingelhoets' third shot succeeded in penetrating Shakes' skin and lodging in his spinal cavity, which ultimately resulted in Shakes' death. Furthermore, the jury also heard testimony that: (a) Klingelhoets shot Shakes not once but three times from within the gun's firing range and only stopped firing after Shakes "went down"; (b) the weapon Klingelhoets used to shoot Shakes was a "high-powered air rifle" which had a velocity that was "at the upper end of the velocities" for its caliber; (c) all three shots from the

_____

[8] Klingelhoets acknowledges that a pellet gun "has the capacity to cause death—as it did in this case."

rifle caused wounds which succeeded in penetrating Shakes' skin, with the third shot penetrating to the spinal canal; (d) death is a common result of the type of injury Klingelhoets inflicted on Shakes with his third shot; (e) the rifle had a scope on it, which Klingelhoets used in shooting Shakes.

¶ 25. Based on this testimony, there was sufficient evidence from which a reasonable jury could find that the pellet gun used by Klingelhoets to shoot Shakes, from the manner in which it was used in this case, could easily and readily produce death and, therefore, was a "deadly weapon," as that term is used in WIS. STAT. § 951.09.

## Conclusion

¶ 26. Klingelhoets shot his neighbor's small Jack Russell terrier, Shakes, three times with a pellet gun, resulting in Shakes' death. Because WIS. STAT. §§ 951.02 and 951.18(1) do not require the jury to have found that Klingelhoets intended Shakes' death, but instead only require the jury to have found that Klingelhoets intended to treat Shakes in a cruel manner and that Shakes' death resulted, we uphold Klingelhoets' felony conviction for intentionally mistreating an animal, resulting in the animal's death. We also uphold Klingelhoets' misdemeanor conviction, given that the evidence before the jury was sufficient to support a finding that the pellet gun Klingelhoets used to shoot Shakes was a "deadly weapon" under WIS. STAT. § 951.09.

*By the Court.*—Judgment and order affirmed.